Thomas L. X. PENN EL

v.

W. M. RIDDLE, Sup't., etc., et al.

Civ. A. No. 75-0266-R.

United States District Court,
E. D. Virginia,
Richmond Division.

Aug. 5, 1975.

C. Daniel Stevens, Richmond, Va., for plaintiff.

James W. Hopper, Asst. Atty. Gen. of Virginia, Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Thomas L. X. Penn El, a black Virginia prisoner, seeks declaratory, injunctive and monetary relief under 42 U.S.C. § 1983 from alleged deprivations of his constitutionally protected rights by the defendant penal officials. Jurisdiction of the Court is attained pursuant to 28 U.S.C. §§ 1343, 2201 and 2202. The matter is presently before the Court upon defendants' motion for summary judgment, to which plaintiff has responded. Upon the pleadings, affidavits and contemporaneous prison records before it, the Court deems this matter ripe for disposition.

In his complaint, plaintiff alleges that on May 1, 1975, he was the subject of several searches conducted by guards at the Virginia State Penitentiary. He contends that in the morning hours defendant H. L. Booker and two other guards approached him in the ball park area where he was working. Plaintiff admits that at that time the guards seized a paper bag containing a quantity of match heads from his clothing and a section of pipe approximately six inches long by two inches in diameter from a nearby tool shack. He states that he was then taken to an office where a skin and body-cavity search resulted in the seizure of a flash light bulb, with tape and copper wire attached to it. Plaintiff contends that another search of the tool shack later that day turned up three knives and a battery and that a search of his cell during the afternoon resulted in the seizure of a pad of blank prescription forms containing approximately twelve sheets of paper.

Plaintiff further admits that on May 1st, he received notice that a charge had been filed against him for possessing the various articles seized and suggesting that these items could be used for the purpose of constructing a bomb. He alleges that on May 8, 1975, without any prior warnings as to his rights, he was taken before the Institutional Classification Committee which increased his security status. Plaintiff also contends that he appeared before the Adjustment Committee the following day, that he was found guilty of the offense charged and was sentenced to serve fifteen days in solitary confinement.

Plaintiff also admits that on May 16, 1975, while in maximum security, he cut himself, set his mattress afire and broke the commode in his cell. He states that he was then given medical attention and that on May 22, 1975, he appeared before the Adjustment Committee which found him guilty of destroying state property, sentenced him to thirty-days cell restriction and recommended to the Superintendent of the Penitentiary that his account be charged for the damages he had caused.

Relying upon the facts alleged, plaintiff raises several legal claims. First, he contends that the charges against him had been fabricated. He suggests,

for example, that the matches seized were to be used to burn trash, that the flash light bulb was to be used to test the wiring on a radio he was constructing, and that the pipe and knives were seized in a tool shack to which other inmates had access. With regard to the prescription forms found in his cell, he alleges, in effect, that they could have been placed there by someone else. Plaintiff also contends that on May 1st, defendant H. L. Booker told him that defendant E. L. Booker, Chief of Security for the Penitentiary, had given orders to lock up plaintiff even if the charges had to be falsified. He states further that defendant E. L. Booker had interrogated him on various occasions over the years concerning plaintiff's involvement in unsolved murders and robberies. In sum, plaintiff alleges that the activities of the defendants are part of a "master plot . . . to harass, antagonize, persecute physically and mentally torture" him, and that this alleged plot is racially motivated because he is black.

With regard to plaintiff's remaining claims, he contends that the body-cavity search conducted on May 1st violated his rights under the Fourth and Fourteenth Amendments to the Constitution. Next, he alleges his rights to due process of law were violated by the Institutional Classification Committee's failure to advise him of his rights prior to his May 8th hearing. Finally, he argues that his confinement in a "steel-massed" caged cell constitutes cruel and unusual punishment and that his present inability to participate in rehabilitative programs, such as educational training, denies him equal protection of the law.

In support of their motion for summary judgment, the defendants have tendered various contemporaneous prison records, including Classification and Adjustment Committee action reports, which, with slight variations as to dates, substantially confirm the plaintiff's factual allegations. The records also indicate, however, that on May 5, 1975, the Adjustment Committee referred the matter of plaintiff's possession of the various items found on his person and in his work area to the Commonwealth Attorney's office for prosecution. At that time the Adjustment Committee also referred the matter to the Classification Committee, which recommended, following a hearing conducted on May 8, 1975, that plaintiff be assigned to the maximum security building pending the results of the Commonwealth Attorney's investigation, with reviews provided upon disposition or at 120-day intervals.

Treating plaintiff's initial claim as an allegation that the various Adjustment and Classification Committee actions against him were arbitrary or capricious, the Court finds this claim to be without merit. Relying upon the contemporaneous records submitted by the defendants, as it may in considering a motion for summary judgment, *Harper v. Royster*, No. 15,055 (4th Cir., Sept. 10, 1971), the Court concludes that the treatment accorded the plaintiff comports with the standards previously announced by this Court with regard to such matters. See *Landman v. Royster*, 333 F.Supp. 621 (E.D.Va. 1971) and *Ferrell v. Huffman*, 350 F. Supp. 164 (E.D.Va.1972). Moreover, as to plaintiff's claim directed specifically at the May 8th Classification Committee hearing, the Court finds, once again based upon the prison records, that he was advised of his rights and the nature of the charges no later than May 6, 1975. Furthermore, although plaintiff has submitted four affidavits to the Court in which fellow-inmates attest to the fact that they overheard another inmate state that he had "planted" the items found in the area of the ball park, the minutes of the May 8th hearing indicate that plaintiff made no attempt to offer their testimony at that time. Accordingly, the Court must conclude that this claim is similarly without merit. See *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

 As to plaintiff's claim regarding the body-cavity search conducted on May 1st, the Court finds that searches of this type lie within the sound discretion of prison officials and do not in and of themselves constitute violations of prisoner's Fourth Amendment rights. In view of the fact that other items of contraband had been found on the plaintiff's clothing and in his work area immediately prior to the search in question, the Court cannot say that the de-. fendants abused their discretion nor, for that matter, that the search itself was unreasonable. Cf. *Gettleman v. Werner,* 377 F.Supp. 445 (W.D.Pa.1974). See also *Daughtery v. Harris,* 476 F.2d 292 (10th Cir.), *cert. denied,* 414 U.S. 872, 94 S.Ct. 112, 38 L.Ed.2d 91 (1973).

With regard to plaintiff's Eighth Amendment claim, he alleges that on May 16, 1975, he was placed in a "steel-massed" caged cell, and that, after cutting himself, setting his mattress on fire and breaking his commode that day, he was placed in a "strip-pad cell" where he remained until May 19th. He also states that he was placed on sleeping pills and tranquilizers by a prison doctor on May 17th and that he was seen by the prison psychiatrist on May 19th, at which time his prescriptions were extended for a period of two weeks.

 It has recently been held that there are two tests for violations of the Eighth Amendment within the context of a prison environment. They are whether the conditions of punishment are sufficiently "shocking" that they amount to "cruel and unusual" punishment or whether the punishment is arbitrary, unreasonable or unnecessary. *McCray v. Burrell,* 516 F.2d 357 at 367 (4th Cir., 1975). On the basis of the plaintiff's allegations and considering the circumstances surrounding his placement in an isolation and strip cell, the Court finds that neither test has been met. Therefore, the Court will deny plaintiff's request for relief on this claim.

██ Finally, plaintiff's claim concerning his inability to participate in rehabilitative programs due to the conditions of his confinement does not state a deprivation of constitutional dimensions. Moreover, the Fourth Circuit Court of Appeals has clearly stated that the administration of such programs involves the discretion which prison officials must exercise for the management of their institutions. *Thompson v. Slayton,* No. 73–1457 (4th Cir., June 18, 1973). Accordingly, the Court finds that there is no genuine issue of material fact remaining and will grant defendants' motion for summary judgment.

An appropriate order will issue.