Debra LEE, Plaintiff,

v.

Ann DOWNS, Superintendent, Correctional Center for Women, Correctional Officer Brooks, Correctional Officer Patterson, Defendants.

Civ. A. No. 78–0522–R.

United States District Court,
E. D. Virginia,
Richmond Division.

May 3, 1979.

William P. Robinson, Jr., Norfolk, Va., for plaintiff.

Alan Katz, Asst. Atty. Gen., Richmond, Va., for defendants.

### OPINION AND ORDER

CLARKE, District Judge.

Plaintiff brought suit pursuant to 42 U.S.C. § 1983 alleging a deprivation of her constitutional rights for incidents which occurred while she was confined as an inmate at the Goochland Correctional Center for Women.

This matter came to trial before the Court with a jury. Although there was little dispute as to the facts underlying plaintiff's claims, taking the evidence in a light most favorable to the plaintiff reveals the following events occurred. After plaintiff was assigned to work in the institution kitchen, fellow inmates threatened to set fire to plaintiff's cell when she refused to steal sugar from the kitchen supplies. The plaintiff's testimony showed that on one prior occasion an inmate's room was set on

fire by other inmates. Plaintiff reported this threat to Miss Dove of the prison staff. On the following day, plaintiff again reported the threat to a Miss Lancelot of the institution staff. It was on this second day that plaintiff then approached Ms. Bryan of the prison staff and threatened to strike Bryan if plaintiff was not moved to another cell. Plaintiff admitted that she gave Bryan no reason why she wanted to be moved to another building.

Immediately following this confrontation with Bryan, plaintiff was moved to a cell in the maximum security building. Upon her arrival at the maximum security building, plaintiff was searched, given a prison dress and placed in a cell. Within half an hour after being placed in the cell plaintiff was found lying on the floor of the cell with an electrical cord loosely wrapped around her neck. Plaintiff either had not donned or had removed her dress and was clothed only in her bra and underpants. Plaintiff admitted that she forcibly resisted the guards' attempt to remove the cord and to clothe her. Male and female correctional officials then wrapped plaintiff in a blanket and took her to the prison clinic.

Upon her arrival at the clinic, the nurse on duty telephoned the prison doctor and told him of the apparent suicide threat. The doctor told the nurse to take away all of plaintiff's clothing including her undergarments as a precaution against a further suicide attempt by hanging. Plaintiff's evidence was that she refused to remove her undergarments in the presence of male officers. At that point, prison officials removed her undergarments. It was undisputed that male guards were present during this disrobing. Plaintiff was then placed in a cell at the clinic. Plaintiff also testified that during the time she was being held in the clinic she began her menstrual

cycle and requested from a nurse, but was refused, sanitary napkins. In addition, plaintiff was given some prescription medication prior to her transfer to the Central State mental health institution.[1]

Four days later while still confined in the prison clinic, plaintiff removed a paper gown which she was wearing and set the gown on fire while laughing and clapping her hands over the flames. After a prison nurse extinguished the flames with water, plaintiff's evidence was that she informed prison personnel that she had only the single match which she had already used to set the gown aflame. At that point, two male guards held the plaintiff's arms and a third male guard held plaintiff's legs while a female prison nurse, using plastic examination gloves, examined plaintiff's vaginal cavity to discover if plaintiff was concealing any more matches. No additional matches were found.

Based on the foregoing facts, the case was submitted to the jury on four issues: failure to protect plaintiff from threats of inmate assault; failure to provide plaintiff adequate medical treatment; a claim based on the body cavity search of the plaintiff; and a claim based on the disrobing of the plaintiff by prison personnel. Each issue was separately presented to the jury by means of special verdicts. The jury returned the following verdicts, each in favor of the plaintiff: (1) against defendant Ann Downes in the amount of $5,000.00 on the failure to protect from assault claim; (2) against defendants Ann Downes, D. B. Brooks and W. Q. Patterson in the amount of $4,000.00 on the failure to provide adequate medical treatment claim; (3) against defendant Ann Downes, D. B. Brooks and W. Q. Patterson in the amount of $7,000.00 on the body search claim; and (4) against defendants Ann Downes, D. B. Brooks and

1. The evidence regarding medication given to plaintiff was sketchy. Plaintiff stated only that she refused medication offered to her following her arrival at the prison clinic. Defendant's evidence and clinic records indicated that plaintiff subsequently did receive some antidepressant and tranquilizing medication. Regarding any type of adverse reaction by the plaintiff to

any medication, the evidence was limited to a description of plaintiff's "paralyzed" state when she was confined at the Central State Hospital. Plaintiff, however, has stipulated that she was making no claim for any events that might have occurred at the Central state facility.

W. Q. Patterson in the amount of $4,000.00 on the disrobing claim. In each case, the jury verdict indicated the award was for compensatory damages and that no punitive damages were awarded. Following the jury's verdicts, the defendants moved for judgment notwithstanding the verdict. Without objection entry of judgment was held in abeyance while the Court took the matter under advisement. The parties have submitted briefs on the issues and the matter is now before the Court on defendants' motion for judgment notwithstanding the verdict.

■ The law in this Circuit with regard to failure to protect prisoners from threats of assault by other inmates is clear. There is no doubt that prisoners need not wait until they are actually assaulted to have an actual claim for a constitutional deprivation. However, it is also clear that occasional isolated attacks by one prisoner on another may not constitute cruel or unusual punishment. *Woodhous v. Commonwealth,* 487 F.2d 889, 890 (4th Cir. 1973). Before a deprivation of a constitutional right is stated, there must be "a pattern of indisputed and unchecked violence or . . an egregious failure to provide security to a particular inmate," *Penn v. Oliver,* 351 F.Supp. 1292, 1294 (E.D.Va.1972), in a prison "where violence and terror reign." *Woodhous, supra* at 890.

■ Other than the single incident described above, there was no evidence whatsoever of any attack by an inmate upon plaintiff or any other prisoner. Moreover, there simply was no evidence of any other threats directed toward plaintiff by fellow inmates other than the isolated threat to set her room on fire on the same day that plaintiff complained to prison officials. While under the standards set out above, this situation demands the jury verdict be set aside, the verdict also must be overturned on another ground.

■ At the close of plaintiff's case, the evidence was such that the Court ruled that the case could proceed on this claim only against defendant Downes, the prison superintendent. There was, however, no evidence that defendant Downes had any knowledge whatsoever of the threat against the plaintiff. Indeed, the evidence was uncontradicted that Downes was not present or even in contact with the institution at the time of, or for several days after, the threat against plaintiff and plaintiff's report of the threat to prison officials.

■ Actions of a subordinate can be imposed on higher officials only when the superior had knowledge or acquiesced in the allegedly unconstitutional acts. *Vinnedge v. Gibbs,* 550 F.2d 926 (4th Cir. 1977); *Landman v. Royster,* 354 F.Supp. 1302, 1316 (E.D.Va.1973); *see Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). The evidence was completely devoid of any affirmative link to defendant Downes showing the authorization or approval of any failure to protect plaintiff by other prison officials.

Thus, the Court finds as a matter of law there simply was no evidence to sustain the jury's verdict either that plaintiff's rights were violated or even if they were, that defendant Downes was in any manner responsible for such a deprivation.

The evidence with regard to the claim that plaintiff was denied adequate medical treatment suffers the same two deficiencies as the issue of inmate threats. There was neither any evidence of a denial of medical treatment sufficient to constitute a constitutional deprivation nor any evidence showing any connection of the three defendants with the medical assistance that was rendered.

■ Under the evidence adduced at trial, the issue of the adequacy of medical treatment may have been raised as to three separate, but partially related, incidents: (1) the response to plaintiff's apparent suicide attempt; (2) medication prescribed and given to the plaintiff; and (3) the failure to provide plaintiff with sanitary napkins during her menstrual cycle. As to the latter two incidents, the Court need not decide whether such events amounted to an unconstitutional deprivation of medical assistance

or otherwise constituted cruel and unusual punishment because there was no evidence that any of the three defendants had any connection or knowledge of those events. All medication given to plaintiff was prescribed by a prison physician and administered by the institution's nursing staff, none of whom are parties to this action. Nor was there any evidence to connect the defendants with the failure to provide plaintiff with sanitary napkins.

With regard to the response to plaintiff's apparent attempted suicide, there was evidence of participation in that response by the defendants. Officers Brooks and Patterson did participate in transferring the plaintiff from the maximum security building to the prison clinic when plaintiff was found lying on the floor with the electrical cord loosely wrapped around her neck. In addition, Superintendent Downes testified that it was her policy that her staff should treat all suicide attempts, real or feigned, as actual attempts. In light of the potential repercussions of any other course of action, the Court holds as a matter of law that such a procedure does not amount to a constitutional deprivation.

There was no evidence on which the jury could properly find a denial of adequate medical treatment under 42 U.S.C. § 1983. To raise a cognizable deprivation in this area, the United States Supreme Court has set the standard that defendants' acts must amount to a deliberate indifference to plaintiff's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *see Lunsford v. Reynolds*, 376 F.Supp. 526 (W.D.Va. 1974). Mere negligence, by itself, is not sufficient to state a cause of action under section 1983. *Street v. Surdyka*, 492 F.2d 368 (4th Cir. 1974). There was no evidence to indicate any intentional misconduct by the defendants. In addition, plaintiff expressly denied that she was suffering from any severe or obvious injury or illness. In sum, there was no evidence on which the jury could have found that the acts of these defendants amounted to a deliberate indifference to plaintiff's serious medical needs, if indeed, she had such needs.

With regard to plaintiff's contention that the body cavity search constituted cruel and unusual punishment.[2] there can be no question that body cavity searches normally represent an extreme invasion of a person's right to privacy. However, in a prison context, such matters are not so clear cut. In a prison environment, body cavity searches are not *per se* unreasonable. *Penn El v. Riddle*, 399 F.Supp. 1059 (E.D.Va. 1975); *see Hurley v. Ward*, 584 F.2d 609 (2d Cir. 1978); *United States v. Lilly*, 576 F.2d 1240 (5th Cir. 1978); *Hodges v. Klein*, 412 F.Supp. 896 (D.N.J.1976). Rather, such searches lie within the sound discretion of prison officials. *Penn El, supra* at 1062.

Under the undisputed circumstances in which the present search occurred, the Court would have little difficulty in finding a search of the plaintiff was justified as a matter of law. Indeed, plaintiff's actions would seem to demand such a search for materials with which she might have possibly harmed herself. *See McMahon v. Beard*, 583 F.2d 172 (5th Cir. 1978). The difficulty arises, however, due to the presence of male correctional officers during the search and their participation by restraining the plaintiff.

Notwithstanding the presence and limited participation by male guards, the Court finds as a matter of law that defendants' actions did not amount to cruel and unusual punishment. It is noted that the evidence showed that at no time was the plaintiff ever left alone with male guards.

2. In her brief in opposition to defendants' motion, plaintiff attempted to distinguish several of the cases cited below on the basis that those decisions involved claims under the Fourth Amendment's prohibition of unreasonable searches and seizures rather than a claim of cruel and unusual punishment under the Eighth Amendment. Under the facts of the present suit, the Court does not see any material difference between the applicable standards under either the Eighth or Fourth Amendments. *Cf. Penn El v. Riddle*, 399 F.Supp. 1059, 1061–62 (E.D.Va.1975).

Male guards were used only to restrain the plaintiff and were always in the presence of female correctional guards or nurses. The plaintiff is a large and apparently healthy young woman. Her own testimony was that she had previously forcibly resisted the attempt to remove the radio cord from around her neck and to clothe her as discussed above. From her appearance, there is no doubt that she is capable of significant physical strength. There is no doubt that to restrain such a woman without injuring her would require a number of individuals, themselves of no mean physical capabilities. Moreover, the evidence was clear that plaintiff was on notice from the prior incidents involving the apparent suicide attempt and the disrobing claim discussed below that male guards were used, wrongly or rightly, to restrain unruly female prisoners. Furthermore, the emergency situation was clear. Plaintiff, confined in the clinic due to a possible suicide attempt, had just set a fire in her cell. Her irrational behavior in jumping and clapping her hands over the flames would belie any reliance on her statements that she had no more matches. Moreover, the evidence was uncontradicted that at least on one prior occasion a prisoner had concealed matches in her vaginal cavity and that there was an indisputable hazard that inmates might set their hair on fire. It was incumbent upon prison officials to make sure plaintiff did not have the means to further injure herself.

Plaintiff, however, suggests that the search could have been delayed until enough female correctional officers could be assembled to participate in the search. However, in addition to the undisputed testimony that it was not feasible to remove other female officers from their posts for this purpose and the obvious difficulty in restraining the plaintiff, the exigent nature of the search was critical.

> . . . [P]rison guards must have discretion to act quickly and decisively, and other reasonable procedures in everyday disciplinary problems should not be employed to handcuff prison guards.

*Gettleman v. Werner,* 377 F.Supp. 445, 451 (W.D.Pa.1974). Finally, there was no evidence of any abusive language during the search other than by the plaintiff herself and no suggestion that plaintiff was physically harmed in any way by the search or the restraint required to conduct it.

Based on the foregoing, the Court finds as a matter of law that the evidence as to the claim based upon the body cavity search and the manner in which it was conducted was not sufficient to sustain a verdict that such acts constituted cruel or unusual punishment.

The final issue involves the forcible removal of plaintiff's clothes upon her arrival at the prison clinic following her apparent suicide threat. Again this was accomplished in the presence of male correctional officers. However, construing the evidence most favorably to the plaintiff, the presence of male guards was not mandated by plaintiff's actions on this occasion. There can be little question that the removal of plaintiff's clothes was a necessary precaution against a further possible suicide attempt by the plaintiff. *See McMahon, supra* at 173. Plaintiff's evidence, however, was such that the jury could have properly inferred that plaintiff would have voluntarily removed her undergarments if the male guards would have left the room. Under such a situation, the Court does not find that the presence of the male officers was required. In addition, the evidence was such that the jury could have properly determined that defendant Downes had acquiesced in such a procedure by her failure to promulgate specific guidelines to assure this type of incident would not occur. Based on that finding, the Court deems the evidence was sufficient to present a jury question as to whether such action was sufficiently shocking or arbitrary, unreasonable or unnecessary so as to amount to cruel and unusual punishment. *See Penn El, supra* at 1062; *Lilly, supra* at 1244–47.

For the foregoing reasons, the Court finds that as to the issues of: (1) failure to protect plaintiff from threats of inmate assault, (2) failure to provide plaintiff adequate medical treatment, and (3) the claim

based on the body search, there was not sufficient evidence to sustain the jury's verdict. As to those three issues, the Court holds there was no constitutional deprivation as a matter of law. The defendants' motion for judgment notwithstanding the verdict is GRANTED as to verdicts (1), (2), and (3), the jury's verdict is ORDERED set aside, and it is ORDERED that judgment be entered for the defendants. As to the fourth issue and verdict involving the disrobing claim, the defendants' motion is DENIED and it is ORDERED that judgment in the amount of $4,000.00 be entered upon the jury's verdict in favor of the plaintiff against defendants Downes, Brooks and Patterson.