Charles D. FERGUSON and Jerry Joe Hillyer, Plaintiffs,

v.

Harold J. CARDWELL, Warden, Arizona State Prison, and Donald Danard, Lieutenant, Arizona State Prison, Defendants.

**No. CIV 74–411 PHX–CAM.**

United States District Court,
D. Arizona.

April 10, 1975.

Charles D. Ferguson, Jerry Joe Hillyer, in pro per.

Atty. Gen. Bruce E. Babbitt, State of Arizona, Phoenix, Ariz., for defendants.

## ORDER

MUECKE, District Judge.

It is hereby ordered that this Court, having received and considered plaintiffs' civil rights complaint dated May 29, 1974; and having received and considered the answer and motion to dismiss from the defendants dated July 5, 1974; and having received and considered all other memoranda submitted in this case; finds that the defendants' motion to dismiss should be granted.

Plaintiffs, inmates at Arizona State Prison, seek injunctive relief from the conduct of prison officials, whereby said officials extract blood samples from certain prisoners suspected of using drugs. The defendants do not deny that such a procedure is for the purpose of detecting those inmates using drugs. Plaintiffs object to the taking of the blood samples on the grounds that their 4th and 14th Amendment rights under the United States Constitution are violated by such procedures in that the taking of such blood samples constitutes an illegal search and seizure. Plaintiffs contend that defendants must have probable cause to conduct such a search and that a search warrant based upon such probable cause must be secured prior to the taking of blood samples.

It is now well settled that a prisoner is not stripped of all of his rights upon entering prison. Price v. Johnston, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948); Sostre v. McGinnis, 334 F.2d 906 (2nd Cir. 1964), cert. denied, 379

U.S. 892, 85 S.Ct. 168, 13 L.Ed.2d 96 (1964). The prisoner:

"  . . . [W]hile forfeiting, as a necessary corollary of prison life, significant rights and privileges enjoyed by the general populace, retain those basic rights which are not incompatible with the running of the penal institution." Newkirk v. Butler, 364 F.Supp. 497, 501 (D.C.N.Y. 1973), modified on other grounds in 499 F.2d 1214.

■ Some of the rights that prisoners retain upon entering prison are: the right to reasonable access to the courts, Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); 1st Amendment rights, including freedom of religion, Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); and, the right to equal protection and other rights not forfeited by requirements of prison discipline, Toles v. Katzenbach, 385 F.2d 107 (9th Cir. 1967). In those cases which hold that prisoners retain certain rights, there is generally the explicit or tacit acknowledgment that the rights involved will not impede legitimate correctional efforts at the institution. See Toles v. Katzenbach, *supra*. A prisoner's retention of 4th Amendment rights which prohibit unreasonable searches and seizures is basically inconsistent with the correctional process in that the prisoner must be monitored as closely as possible to insure that he is complying with the directives of the institution. Thus, it follows that previously private areas of the prisoner's life must now be bared to the scrutiny of prison officials who are charged with the care and custody of the prisoner.

■ The recent case of Gettleman v. Werner, 377 F.Supp. 445, 451 (W.D.Pa. 1974), recognized that:

"A Penitentiary is a unique institution fraught with sensitive security hazards, not the least of these being smuggling of contraband such as drugs . . . .. The state has a high security interest in eliminating smuggling into and out of penitentiaries."

The court went on to hold that:

"A prison employee, upon entering the prison gate, leaves his ˙ Fourth Amendment rights on the outside to the extent that a search warrant, or probable cause, is required to validate a search for contraband."

Thus, since a prison employee is subject to search without a warrant or probable cause, it necessarily follows that the inmates are likewise subject to searches without a warrant or probable cause. See also, Lanza v. State of New York, 370 U.S. 139, 143, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962).

■■ It is clear that the taking of such blood samples does not violate the privilege against self incrimination. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). In the present case, the blood samples were taken by qualified medical personnel under sanitary conditions. Further, there is no allegation of undue force or that plaintiffs were degraded or humiliated during the course of the search. Therefore, plaintiffs' due process rights under the 5th Amendment are not violated. Daugherty v. Harris, 476 F.2d 292 (10th Cir. 1973); and Blackford v. United States, 247 F.2d 745, 753 (9th Cir. 1957).

■ Thus, this Court holds that plaintiffs cannot prevail under the 4th Amendment's protection against unreasonable searches and seizures since the penal process necessarily imposes significantly upon the privacy of the prisoner. This is not to say that prisoners have no 4th Amendment rights whatsoever. The holding herein is limited to the facts of this case.

Therefore, it is ordered that plaintiffs' complaint is hereby dismissed for the above stated reasons.