**Clarence Gerard SHELVIN, Relator,**

v.

**Hon. Patricia LYKOS, District Judge, Respondent.**

**No. 01–87–0564–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 5, 1987.

John L. Denninger, Walter Boyd, Houston, for relator.

Ted Doebbler, Staff Atty. to District Judges Trying Criminal Cases, Houston, for respondent.

John B. Holmes, Jr., Harris Co. Dist. Atty., William J. Delmore, III, Lee V. Coffee, Harris Co. Asst. Dist. Attys., Houston, for parties in interest.

Bruce Griffiths, Alexander Bunin, American Civil Liberties Union and The Texas Civil Liberties Union, Houston, for amicus curiae relator.

Before EVANS, C.J., and SAM BASS and HOYT, JJ.

## Opinion

SAM BASS, Justice.

This is an original proceeding brought by relator, Clarence Gerard Shelvin, asking that this Court enter an order of mandamus or prohibition to restrain the respondent, the Hon. Patricia Lykos, Judge of the 180th Judicial District Court of Harris County, from using or disclosing the results of a test made of relator's blood to determine the presence of the AIDS virus or venereal disease.

The relator is incarcerated in the Harris County Jail, charged in respondent's court with aggravated robbery and two cases of aggravated sexual abuse. The State of Texas, through the Office of the District Attorney of Harris County, filed a motion in relator's criminal proceedings, asking the court to order the medical administrator of the Harris County Jail to take samples of relator's blood and to perform tests for Acquired Immune Deficiency Syndrome (AIDS). The State alleged that the relator was not only charged with the two sexual assaults but that he was a suspect in as many as 10 other alleged sexual assaults, involving young males between the ages of 14 and 18. The State's motion alleged that the Houston Police Department and the parents of the alleged victims were concerned about whether the accused was infected with the AIDS virus, and that the requested test was in the best interest and for the protection of the victims of the alleged acts, and also for the protection of the inmates and staff members of the Harris County Jail.

The respondent conducted a hearing on the State's motion, at which no evidence was presented, and both the State and relator's counsel rested after making their respective legal arguments. The State argued that it was entitled to have tests made of the relator's blood and that such testing did not violate the relator's constitutional rights under the fifth or fourteenth amendments. Relator contended that before such tests could be made, the State would be required to obtain a search warrant, and that a search warrant would be void because it would reveal no evidence probative of any issue in the pending proceedings. At the conclusion of the hearing, the court entered the order of which relator complains, which is set forth below in its entirety.

The Court finds as follows: That the Defendant is presently on parole from the Texas Department of Corrections, that he was convicted of a sexually related offense, that he is before this Court charged with aggravated sexual assault with allegations of oral and anal sodomy. The Court further finds that there are competing interests in this case; the inviolability of the individual, vis-a-vis the best interest of society, and in balancing these interests the Court finds that the Defendant is presently incarcerated in the Harris County Jail, and it is manifest that a jail must be safe and secure, not only for society in general but for those who are within the jail, including inmates, the staff, and the Defendant; that this is a health issue, (a matter of public policy) as well as an evidentiary issue. The Court further finds that a blood test is a minor intrusion to the individual, and that should a test reveal the AIDS virus present, indicia of any other venereal disease or sexually transmitted disease, that this would affect the jail's classification of the Defendant. Additionally, it would certainly be of interest to anyone who has had recent sexual contact with the Defendant, that they may obtain treatment and take appropriate caution regarding their own behavior in the future. For these compelling reasons the Court orders as follows: That the State's motion be granted and thusly, the Sheriff of Harris County or one of his deputies is hereby ordered to immediately transfer the Defendant to Virgil Cupit, the Medical Administrator of Har-

ris County Jail, and the said Virgil Cupit is hereby ordered to draw immediately a sample of human blood from the Defendant of a sufficient quantity to perform tests for the presence of the AIDS virus, or any other venereal disease or any other sexually transmitted disease, and the said Virgil Cupit is ordered to further transfer immediately the said blood sample to the Harris County Sheriff's Office Jail Laboratory, where said laboratory is ordered to perform the aforementioned test immediately to determine whether or not the Defendant is infected with the AIDS virus or any other venereal disease or sexually transmitted disease. The results of this blood test are to be sealed and conveyed only to the Court, and the Court will determine the disclosure of said information.

The issue of the admissibility of this test result in a trial to the merits will be decided at a later date, after affording the State and the Defendant an opportunity to argue this issue.

Relator concedes that the complaints made in the trial court regarding the taking and testing of his blood are now moot, because those procedures were performed before relator's application was filed in this Court.

This Court may consider relator's application with regard to the disclosure of the test results. Tex.Gov't.Code § 22.221 (Vernon Pamph.1987) provides:

(a) Each court of appeals or a justice of a court of appeals may issue a writ of mandamus and all other writs necessary to enforce the jurisdiction of the court.

(b) Each court of appeals may issue all writs of mandamus, agreeable to the principles of law regulating those writs, against a judge of a district or county court.

*See also Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916 (Tex.1985). It has been held that this jurisdiction extends to a district or county court judge in criminal proceedings. *Dickens v. Court of Appeals 2nd Supreme Judicial Dist.,* 727 S.W.2d 542 (Tex.Crim.App.1987); *see also State ex rel. Millsap v. Lozano,* 692 S.W.2d 470 (Tex.Crim.App.1985).

Respondent does not contest this Court's jurisdiction to issue appropriate writs of mandamus under Tex.Gov't Code sec. 22.221(b), but respondent does argue, and we agree, that our jurisdiction to issue "all other writs" under section 22.221(a) is limited to cases in which this Court has actual, as distinguished from potential, jurisdiction of a pending proceeding. Thus, we conclude that Tex.Gov't Code § 22.221(a) is inapplicable to the circumstances of this proceeding, and that our jurisdiction rests upon the authority granted to courts of appeals under section 22.-221(b).

We next consider whether we may grant all or any part of the relief requested by relator's application. In relator's brief filed in support of this application, he asks that this Court enter an order of mandamus or prohibition:

(a) to restrain the respondent from making any further use whatsoever of the blood test results including the disclosure to anyone of such results or from encouraging in any manner anyone else from doing so.

(b) to order that the blood test results in the respondent's custody or which may be delivered to respondent in the future be destroyed.

(c) that the blood test results not be disclosed to anyone for evidentiary purposes in the criminal cases until and unless relator has had an opportunity to be heard in advance on the issue and a reasonable opportunity to apply to the court of appeals for relief.

(d) that a copy of this Court's Order be delivered to the Sheriff of Harris County and the District Attorney of Harris County.

Both relator and respondent recognize that there is a very thin line between relief granted by writ of prohibition and that granted by writ of mandamus. But, as respondent sets out in her brief, there is one difference that is of importance in this proceeding. The writ of mandamus, which is the only writ that this

Court may issue under section 22.221(b), operates solely to nullify an act that has already been performed. The writ of prohibition, which this Court does not have authority to issue under section 22.221(b), may be used to prevent the commission of a future act. *See State ex rel. Wade v. Mays,* 689 S.W.2d 893, 897 (Tex.Crim.App. 1985). Thus, we conclude that this Court has jurisdiction to consider whether respondent's order is void, in whole or in part, and to direct that the order or any void portion be vacated. But we further hold that this Court does not have jurisdiction to issue a writ of prohibition against respondent to require that she refrain from performing any future act.

We next consider relator's contention that the respondent's order is void, and that a writ of mandamus may issue to require respondent to vacate the order.

In relator's brief, and at oral submission on relator's application for leave to file, relator conceded that the admissibility of the blood test results at trial is not before us, because relator has a legal remedy by motion to suppress. The State's motion did not request the blood test for use at trial. Nor did the State argue the evidentiary need for the tests at the hearing. And because that issue, including the questions of probable cause and admissibility, must await the determination of relator's motion to suppress, we decline any comment on the merits. Indeed, the respondent's order expressly provides that the admissibility of the test results will be decided at a later date, and recognizes that the State and the relator will have the opportunity to present evidence and argument on the issue.

■■■ The respondent's order does state several additional reasons for taking the blood tests, i.e., that the presence of an AIDS virus or other venereal disease would affect the relator's jail classification, and that the information would be of interest to anyone who would have had recent sexual contact with relator, so these people might obtain treatment and take appropriate precautions regarding their own future behavior. But the order does not specifically state that the test results will be disclosed for any particular purpose, and the order provides that the results are to be sealed and delivered to the court, which "will determine the disclosure of said information." The court did comment, at the conclusion of the hearing on the State's motion, that the court would disclose the test results on a "need-to-know" basis, indicating that the court was considering the disclosure of the results for purposes other than as evidence against relator in the criminal proceedings. Thus, while the order does not specify a particular person or authority to whom the test results might be disclosed, the respondent's order indicated the possibility of disclosure to: (a) the relator; (b) the Sheriff of Harris County, for use in determining relator's jail classification and general safety measures for jail inmates and staff; and, (c) the alleged sexual assault victims and their families. We therefore consider whether the order is void insofar as it concerns the disclosure of the test results for any of those purposes.

Tex.Rev.Civ.Stat.Ann. art. 5115 (Vernon Pamph.1987) provides that "the Commissioners Court shall provide safe and suitable jails for their respective counties, and shall cause the same to be maintained in good sanitary condition at all times...." The term "safe and suitable jails" is defined in article 5115 as—

> [J]ails which provide adequate segregation facilities by having separate enclosures, formed by solid masonry or solid metal walls, or solid walls of other comparable material, separating witnesses from all classifications of prisoners; ... and prisoners with communicable or contagious diseases from all other classifications of prisoners.

In addition to the commissioners' court, the sheriff of each county is also given responsibility for the jails. Tex.Rev.Civ.Stat.Ann. art. 5116(a) (Vernon Pamph.1987) provides, in pertinent part, that:

> Each sheriff is the keeper of the jail of his county. He shall safely keep therein all prisoners committed thereto by lawful authority, subject to the order of the proper court, and shall be responsible for the safe keeping of such prisoners.

Texas Commission on Jail Standards Rule 217.12 provides that each sheriff shall develop and implement a written classification plan, approved by the commission, which shall include a provision for the separation of inmates with communicable or contagious disease from all other inmates; rule 2.15B provides that if an inmate is discovered to have a communicable disease, the inmate shall be isolated immediately and a determination made by medical personnel about prompt diversion to the jail clinic. The rule mandates that under "no circumstances shall such an inmate be further exposed to other inmates or personnel."

We note initially that the application for the blood tests was not made by the Harris County Commissioners' Court or the Harris County Sheriff. There is nothing in the record that would indicate that either the Commissioners' Court or the Sheriff believes that the blood test is necessary to provide a "safe and suitable" jail. No proof was adduced at the hearing on the State's motion that either the Commissioners' Court or the Sheriff had delegated their statutory responsibilities. No testimony was offered by the State that would justify the trial court's interference with the administration of the Harris County Jail. Wide-ranging deference must be accorded the decisions of jail administrators. They, and not the courts, must be permitted to make difficult judgments concerning jail operations. *See Jones v. North Carolina Prisoner's Union,* 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977).

We hold that the order is void as it relates to the disclosure of the blood tests to the Harris County Sheriff or County Commissioners.

The trial court's order also expressed a concern for "anyone who has had recent sexual contact with the defendant." The Texas Department of Health, however, has been given the responsibility to address such public health problems in this state.

The Texas Venereal Disease Act set forth the responsibilities of the Texas Department of Health and other authorities relating to the diagnosis, treatment, and reporting of venereal diseases applicable at the time of the court's order. Tex.Rev.Civ. Stat.Ann. art. 4445d (Vernon Supp.1987) (repealed 1987). Section 2.02 of this statute requires, among other things, that the administrator of a penal institution report diagnosed or treated venereal diseases to the director of the local health department. Section 2.03 prescribes the duty of every physician and every other person who examines or treats a person having a venereal disease to instruct such person in measures for preventing the spread of such disease and of the necessity for treatment until cured or free from the infection. Section 2.04 provides that if the Texas Department of Health or a physician designated to administer state and local laws relating to public health knows that a person is infected with a venereal disease or is reasonably suspected of being infected based upon laboratory evidence or exposure to a reported case of venereal disease, the department or health authority may implement control measures as may be necessary to prevent the introduction, transmission, and spread of disease within the state. Article 5 of the statute mandates that all information and records held by the Texas Department of Health or a local health department relating to known or suspected cases of venereal disease shall be strictly confidential and shall not be released or made public except in certain circumstances, including information released to medical personnel, appropriate state agencies, or county or district courts, to enforce the provisions of the statute and related rules and regulations concerning the control and treatment of venereal diseases.[1]

---

1. The Veneral Disease Act has since been repealed. *See* Communicable Diseases—Prevention and Control—Newborns, AIDS, Court Orders, Testing, and other Regulatory Actions Act, Ch. 543, § 24, 1987 Tex.Sess.Law.Serv. 4343, 4401 (Vernon).

The amended communicable Disease Prevention and Control Act now specifically addresses testing for AIDS. 1987 Tex.Sess.Law.Serv. at 4394-4400. The amended act also provides for sworn applications by the proper health authorities for court orders for the manage-

We conclude that the trial court's order allowing the disclosure by the trial court of the test results to "anyone who has had recent sexual contact with the Defendant" is void.

■ We next address whether the trial court had the inherent or implied power to either order the blood tests or disclose the results.

The most recent and thorough analysis of inherent powers is found in *Eichelberger v. Eichelberger*, 582 S.W.2d 395 (Tex.1979). There, the supreme court was faced with the question of whether its inherent or implied power allowed review of a court of appeals decision that conflicted with a United States Supreme Court decision. The case did not fall within the express grants for appellate review.

The court stated that the "jurisdiction" of a particular court is that portion of the judicial power that it has been expressly authorized to exercise by constitution or statute. *Id.* at 398. In addition to the express grants of judicial power to each court, there are other powers that courts may exercise, though not expressly authorized or described by constitution or statute. These powers are categorized as "implied" and "inherent" powers. The *Eichelberger* court acknowledged that both implied and inherent powers exist in this state and that each had a separate and independent meaning.

The *inherent* judicial power of a court is not derived from legislative grant or specific constitutional provision, "but from the very fact that the court has been created and charged by the constitution with certain duties and responsibilities." Thus, "the inherent powers of a court are those which it may call upon to aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity." *Id.* The *Eichelberger* court concluded that inherent powers exist to enable courts to "effectively perform their judicial functions and to pro-

tect their dignity, independence and integrity." *Id.*

Implied powers do not stand on an independent basis as do inherent powers. Implied powers are those that can and ought to be implied from an express grant of power. *Id.* at 399.

There are few recent cases on inherent or implied powers, and even fewer recent criminal cases. In *Ex parte Browne*, 543 S.W.2d 82, 86 (Tex.1976), the court held that the power to punish for contempt is an inherent power of a court and an essential element of judicial independence and authority. In *Cleveland v. State*, 508 S.W.2d 829, 831 (Tex.Crim.App.1974), the court stated that "on the rare occasions when it is necessary, the court may use its inherent contempt powers to enforce the testimonial duty of a recalcitrant witness." In *Bludworth v. State*, 168 Tex.Cr.R. 549, 330 S.W. 2d 436, 438 (1959) (op. on reh'g), the court stated that "we entertain no doubt of the inherent power of the County Court at law to issue compulsory process for witnesses when necessary in order to protect the rights of the defendant."

Inherent powers are those powers that aid the court in the exercise of its jurisdiction. The jurisdiction of the trial court in this case is based on Tex.Const. Art. V, sec. 8:

> The district courts shall have original jurisdiction in all criminal cases of the grade of felony ... and the court and the judges thereof shall have power to issue writs of habeas corpus, mandamus, injunction, and certiorari, and all writs necessary to enforce their jurisdiction.

The statutory analog to this constitutional provision is found in Tex.Code Crim.P.Ann. art. 4.05. ("District courts and criminal district courts shall have original jurisdiction in criminal cases of the grade of felony....") It is clear that neither the taking of the blood tests nor the disclosure of the blood tests aids the trial court's exercise of its jurisdiction.

We hold that the taking of the relator's blood and the authority to disclose the blood tests results are not within the trial court's inherent or implied powers. No

ment of a person "reasonably suspected of being infected with a communicable disease."

1987 Tex.Sess.Law.Serv. at 4364–4366.

statutory grant of power is urged as a basis for the court's implied power, and no plea is made that the taking and disclosure will enable the court to perform its judicial function, protect its dignity, independence, or integrity.

We conclude that the trial court did not have the constitutional, statutory, or inherent authority to enter its July 20, 1987 order. Mandamus will issue to nullify an order entered without legal authority. *State Ex rel. Wade v. Stephens*, 724 S.W. 2d 141, 143 (Tex.App.—Dallas 1987, orig. proceeding) (mandamus was proper remedy to nullify district court's order requiring aggravated sexual assault complainant to submit to physical examination).

We note finally that while the trial court's order of July 20, 1987, is void and must be vacated, the legislature has spoken to this issue through legislation that became effective September 1, 1987. Under this legislation, trial courts now have statutory authority, in the appropriate cases, to order blood tests. Child Testimony when Child is Victim and Aids Testing, ch. 55, sec. 3, 1987 Tex.Sess.Law Serv. 365, 375 (Vernon).

We grant the petition for writ of mandamus, and direct that Judge Lykos vacate her order of July 20, 1987. We are confident that the trial court will comply with our decision, and a writ of mandamus will issue only if it fails to do so.

EVANS, Chief Justice, dissenting.

I dissent from the majority holding because, in my opinion, the relator's petition does not warrant the issuance of a writ of mandamus.

I agree, however, with the majority's conclusion that this Court lacks jurisdiction to issue a writ of prohibition under the circumstances presented.

Mandamus is an extraordinary writ that will issue only when a clear abuse of discretion is shown. *Rash v. City Council of Houston*, 557 S.W.2d 324, 325 (Tex.Civ. App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.); *State v. James*, 494 S.W.2d 956, 958 (Tex.Civ.App.—Houston [1st Dist.] 1973,

orig. proceeding). Thus, the remedy is not available unless the relator proves an *actual* default in the performance of a clear, legal duty. *Ingleside v. Johnson*, 537 S.W. 2d 145, 150 (Tex.Civ.App.—Corpus Christi 1976, orig. proceeding).

Mandamus is an appropriate remedy to compel the performance of an official duty, but it will not issue *before* the time for performance has arrived. *Love v. Wilcox*, 119 Tex. 256, 279, 28 S.W.2d 515, 526 (1930); *Barnhart v. Bertron*, 356 S.W.2d 390, 392 (Tex.Civ.App.—Houston 1962, orig. proceeding). Accordingly, mandamus cannot be used to vacate a judge's order until an actual ruling has been issued on the particular issue. *Moody v. Jones*, 519 S.W.2d 536 (Tex.Civ.App.—Austin 1975, orig. proceeding). Unless the judge has ruled on the issue, it must be assumed that the judge will perform his or her duty under the law, even though the record indicates a predetermination to take some particular action. *Love v. Wilcox*, 28 S.W.2d at 526.

In this case, the trial judge's order does not show that the judge ever ruled on which persons or entities would be entitled to see the blood test results. To the contrary, the order expressly provides that the test results were to be "sealed and conveyed only to the Court," and that "the Court will determine the disclosure of said information." The order clearly shows that the judge has not ruled on the issue of disclosure, and therefore, we have no basis for the issuance of a writ of mandamus.

The trial judge's comments, made at the hearing on the State's motion, do indicate a predisposition to disclose the information to certain categories of persons. But because the judge did not actually rule on the issue, we must assume that she will follow the law when she makes that determination. *Love v. Wilcox*, 28 S.W.2d at 526.

The majority opinion recognizes the enactment of recent legislation that expressly authorizes the courts, under certain circumstances, to order blood tests taken and to distribute the results of such tests, when an accused person is suspected of having a communicable disease such as AIDS. Tex.

Code Crim.P. 21.31, 1987 Tex.Sess.Law Serv. 375–76 (Vernon), effective September 1, 1987. Although this statute speaks prospectively, I think the trial judge may look to its provisions for guidance in deciding the appropriate recipients of the blood test results. Indeed, this statute merely adds to a district judge's existing authority to assure medical treatment of jail inmates and to protect against the spread of communicable diseases in the jail.[1]

The majority concludes that the trial judge's order is void based on the premise that the trial judge lacked statutory, constitutional, or inherent power to order the taking and testing of relator's blood. In my opinion, the trial court had constitutional jurisdiction over the proceeding, because jurisdiction had not been conferred by the constitution or other law on some other court, tribunal, or administrative body. *Richardson v. First Nat. Life Ins. Co.*, 419 S.W.2d 836 (Tex.1967); Tex. Const. art. V. sec. 8. Accordingly, I believe that it was within the realm of the district judge's authority to order, under appropriate circumstances, the taking and testing of an inmate's blood. Because those matters occurred before relator's writ was filed with this Court, the issue is moot, and I express no view on whether there was a reasonable basis for that action to be taken.[2]

The relator is not without a remedy to protect himself against unauthorized disclosure of the test results, and the trial judge, upon proper motion and hearing, is empowered to grant any relief that can be afforded by a court of law or equity. Tex.Gov't. Code sec. 24.008 (Vernon Supp.1987). Insofar as the record reflects, the relator has not asked for a hearing on the issue of disclosure, and until the trial judge rules on that issue, there is no basis for the issuance of a writ of mandamus.

Therefore, it is my opinion that the relator's petition for writ of mandamus is premature, and that the majority improvidently granted leave to file. I would deny relator's petition without prejudice to its refiling should circumstances later warrant.

---

**1.** The safekeeping of an accused person during confinement is subject to the order of the district court. Tex.Rev.Civ.Stat.Ann. art. 5116 (Vernon 1987), and Texas statutes have long provided for the protection of jail staff and inmates against communicable diseases. *See* Tex.Rev.Civ.Stat.Ann. art. 5115 (Vernon 1987); *see also* Tex.Rev.Civ.Stat.Ann. art. 4445d (Vernon Supp.1987).

**2.** *See Ferguson v. Cardwell,* 392 F.Supp. 750, 752 (D.Ariz.1975) (holding that the penal process

necessarily constitutes a significant imposition upon inmate privacy, and that the taking of blood samples does not violate a prisoner's right to due process or constitutional protection against unreasonable searches and seizures); *see also Dufrin v. Spreen,* 712 F.2d 1084 (6th Cir.1983) (body cavity search of female pretrial detainee); *Lee v. Downs,* 470 F.Supp. 188 (E.D. Va.1979), *aff'd,* 641 F.2d 1117 (4th Cir.1981) (body cavity search of suicidal inmate).