NO. 07-09-0143-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO
 
PANEL A

MAY 12, 2009
                                       ______________________________

IN RE ALVIN EDWARD PARKER, JR., RELATOR
_______________________________

 
Before CAMPBELL and HANCOCK and PIRTLE, JJ.
MEMORANDUM OPINION
          On May 6, 2009, relator Alvin Edward Parker, Jr. filed a petition for writ of prohibition
and a request for temporary relief staying proceedings in the trial court. We denied the
request for temporary relief. Concluding we lack jurisdiction over relator’s petition, we will
dismiss it. 
          According to his petition, relator sought domestication in the trial court of an
Oklahoma judgment appointing him guardian of his mother Loyce Parker. Relator’s sister,
real party in interest Linda S. Jones, moved to vacate the Oklahoma judgment.


 After
considering the arguments and authorities of the parties, the respondent judge sent a letter
to counsel announcing his intention to vacate the Oklahoma judgment. Relator’s petition
states that the trial court’s decision has not been reduced to a signed order. Relator
contends that unless this court issues a writ of prohibition prohibiting the trial court from
signing an order vacating the Oklahoma judgment, he will lack an appellate remedy.
          On our own motion, we consider our jurisdiction to grant the relief relator seeks. See
Buffalo Royalty Corp. v. Enron Corp., 906 S.W.2d 275, 277 (Tex.App.–Amarillo 1995, no
writ) (recognizing our obligation to verify our jurisdiction). Government Code section
22.221 governs the writ power of courts of appeals. Tex. Gov’t Code Ann. § 22.221
(Vernon 2004). A court of appeals may issue writs of mandamus and “all other writs” 
necessary to enforce its jurisdiction. Tex. Gov’t Code Ann. § 22.221(a) (Vernon 2004). 
The jurisdiction of a court of appeals to enter writs under section 22.221(a) is limited to
cases over which it has actual jurisdiction of a pending proceeding. Bayoud v. North Cent.
Inv. Corp., 751 S.W.2d 525, 529 (Tex.App.–Dallas 1988, orig. proceeding) (“[a] court of
appeals does not have jurisdiction, absent a pending appeal, to issue a writ of prohibition
requiring that a trial court refrain from performing a future act”). See also In re Jennings,
No. 07-97-0476, 1998 WL 24352, at *2, 1998 Tex. App. Lexis 475, at *6-7
(Tex.App.–Amarillo January 21, 1998, orig. proceeding) (not designated for publication)
(court of appeals lacked jurisdiction to issue writ of prohibition in absence of pending
appeal); Shelvin v. Lykos, 741 S.W.2d 178, 181 (Tex.App.–Houston [1st Dist.] 1987, orig.
proceeding) (noting distinction between actual and potential appellate jurisdiction). 
          Relator argues Atkins v. Snyder should guide our decision on his petition. 597
S.W.2d 779 (Tex.Civ.App.–Fort Worth 1980, orig. proceeding). But Atkins is not
inconsistent with our conclusion we lack jurisdiction. To the contrary, it illustrates our
limited jurisdiction under section 22.221(a). There, an order taxing attorney’s fees against
Karten was the subject of a pending appeal. Snyder then moved the trial court to hold
Karten and his lawyer Atkins in contempt and enforce the attorney’s fee award. Id. at 780-81. Atkins argued the motion could jeopardize appellate rights in the pending appeal. He
and Karten sought a writ of prohibition from the court of civil appeals. Id. at 781. 
Recognizing its authority to issue a writ of prohibition to preserve the subject matter of a
pending appeal, the appellate court observed “any attempt by the trial court to force Karten
to pay the disputed amount over which an appeal is pending would clearly interfere with
our jurisdiction.” Id. at 782. Thus, Atkins is typical of holdings that a trial court may not
enter an order that interferes with the jurisdiction of an appellate court in a pending appeal. 
See Dawson v. Briggs, 107 S.W.3d 739, 745 (Tex.App.–Fort Worth 2003, no pet.)
(recognizing that holding of Atkins). 
          Here, unlike Atkins, no case on appeal or other proceeding involving the parties to
this original proceeding is pending before this court. We, therefore, are without jurisdiction
to consider the merits of relator’s petition seeking a writ of prohibition. Accordingly, we
dismiss relator’s petition, expressing no opinion on its merits.
 
                                                                James T. Campbell

                                                                          Justice








ws it to be given a certain or definite legal
meaning, it is not ambiguous and the court will construe it as a matter of law. Id. A
contract is ambiguous if, after applying the pertinent rules of construction, it is subject to
two or more reasonable interpretations. Columbia Gas Transmission Corp. v. New Ulm
Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996). In determining whether a contract is
ambiguous, the court should examine and consider the entire writing in an effort to
harmonize and give effect to all the provisions of the contract so that none will be rendered
meaningless. Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983). A proposed contractual
interpretation that would render a portion of the contract meaningless is considered an
unreasonable interpretation. Am. Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154, 159-60
(Tex. 2003).

 Looking solely to the words used in amended section 6.7 of the Agreement, when
FPL has made a valid election to move the point of delivery to the FPL-side POGI, (3) "[i]f . . .
Austin Energy does not accept the Energy at the Point of Generation Interconnection (such
event a "Curtailment"), Austin Energy shall pay" FPL in accordance with the Curtailment
Rate identified in the Agreement (emphasis added). Giving the words used their plain
meaning, Austin's duty to either accept the energy or incur the obligation to pay the
Curtailment Rate for energy not accepted arises when the energy reaches the POGI point
of delivery. Thus, under amended section 6.7, for FPL to be entitled to payment for
energy, whether accepted or not accepted by Austin, the Agreement unambiguously
requires FPL to deliver the energy to the POGI point of delivery.

 That FPL must deliver energy to the point of delivery as a condition precedent to
becoming entitled to payment for the energy is bolstered by a review of other provisions
contained in the Agreement. Section 3.1 of the Agreement states that Austin "shall pay
[FPL] the Primary Price for the Net Electrical Generation of all Energy delivered to Austin
Energy at the Point of Delivery . . ." (emphasis added). Thus, under section 3.1 and
consistent with amended section 6.7, Austin's payment obligation is triggered when energy
is delivered to the point of delivery. Further, section 4.5 of the Agreement states, "Title to
and risk of loss with respect to all Energy shall pass to and vest in Austin Energy from
[FPL] when such Energy is made available to Austin Energy at the Point of Delivery"
(emphasis added). Considering the Agreement as a whole, we conclude that the parties
clearly and unambiguously expressed their intent that any loss occurring prior to FPL's
delivery of energy to the contractual point of delivery would be borne by FPL, while any
loss occurring after energy is delivered to the contractual point of delivery would be borne
by Austin. Further, it is FPL's delivery of energy to the POGI point of delivery that gives
rise to Austin's obligation to pay for the energy in accordance with the terms of the
Agreement.

 The parties to the present appeal, however, do not dispute the proper construction
of amended section 6.7. By their argument, the parties' dispute is predicated on the factual
determination of whether an ERCOT OOME down instruction that limits FPL's ability to
generate electrical energy is a non-acceptance by Austin that would constitute a
curtailment under the Agreement. The following facts are not in dispute. Electric energy
cannot be stored like other fuels. When electric energy is generated, it must immediately
be transported through the ERCOT grid to where it will be used. Thus, ERCOT OOME
down instructions, which are issued due to high volume congestion on the ERCOT grid,
order electrical energy producers to limit their generation of electrical energy to alleviate
the congestion. Because ERCOT OOME down instructions prevent electrical energy
producers from generating electric energy, they have the secondary effect of precluding
delivery of that electrical energy that is not produced. Therefore, as applicable to the
present case, while under an ERCOT OOME down instruction limiting FPL's generation
of energy, FPL is incapable of generating electrical energy prohibited by the ERCOT
OOME down instruction or delivering this energy to the POGI point of delivery. Because
FPL is incapable of delivering electrical energy that it is prohibited from generating to the
POGI point of delivery while under ERCOT OOME down instructions, Austin's duty to pay
under the Agreement is never triggered. Because the effect of an ERCOT OOME down
instruction is to prohibit FPL from delivering energy subject to the instruction to the POGI
point of delivery, amended section 6.7 does not and could not apply to ERCOT OOME
down instructions. 

 While we agree with FPL's contention that amended section 6.7 unambiguously
requires Austin to pay for energy not accepted at the contractually agreed POGI point of
delivery, we conclude that FPL goes too far when it additionally contends that amended
section 6.7 requires Austin to pay "even when ERCOT initiates the curtailment." According
to amended section 6.7(b) of the Agreement, a "Curtailment" is defined as any instance
when Austin "does not accept the Energy at the Point of Generation Interconnection." 
Since a curtailment cannot occur under the Agreement until energy is delivered by FPL to
the POGI point of delivery and since delivery of energy to the POGI is not possible under
an ERCOT OOME down instruction, it is not possible for ERCOT to initiate a curtailment
as defined by the Agreement. 

 As the proper construction of amended section 6.7 of the Agreement requires FPL
to delivery energy to the POGI point of delivery and as delivery of energy that is capable
of being produced but prohibited by an ERCOT OOME down instruction is not possible, we
affirm the trial court's declaration that Austin is not obligated to make curtailment payments
pursuant to amended section 6.7 of the Agreement when ERCOT issues an order or
instruction to reduce or limit the amount of electric energy that can be generated by FPL. 

Open and Close Rights & Evidentiary Rulings

 FPL contends that the trial court reversibly erred in denying FPL's Motion to Open
and Close at Trial because FPL had the burden of proof on the whole case. FPL also
contends that the trial court reversibly erred in sustaining Austin's assertion of privilege as
to certain documents relating to negotiations of amended section 6.7. Austin's claim for
declaratory relief was premised on interpretation of the Agreement and its application to
the facts in this case. FPL's counterclaims, except its claim of waiver, were premised on
the contention that Austin breached the Agreement by failing to make curtailment
payments for energy not accepted due to ERCOT OOME down instructions. Thus,
excepting FPL's claim of waiver, a declaration that amended section 6.7 does not obligate
Austin to make curtailment payments for energy which FPL could not generate or deliver
due to ERCOT OOME down instructions resolves all claims in the case, including FPL's
counterclaims alleging breach of the Agreement for Austin's failure to make curtailment
payments. The evidence that the trial court ruled to be privileged was clearly extraneous
to the Agreement and extraneous evidence may not be considered by a court to alter the
import of the plain meaning of the words used in an unambiguous contract. (4) See Universal
C.I.T. Credit Corp. v. Daniel, 150 Tex. 513, 243 S.W.2d 154, 157 (1951). Standard
Accident Ins. Co. v. Blythe, 130 Tex. 201, 107 S.W.2d 880, 883 (1937). Since all claims
involved in this case, except FPL's claim of waiver and Austin's claim for attorney's fees,
were resolved by the interpretation of the unambiguous amended section 6.7 and the
undisputed effect of an ERCOT OOME down instruction on FPL's ability to deliver energy
to the POGI point of delivery, any error in the trial court's denial of FPL's Motion to Open
and Close at Trial or the denial of evidence is harmless because it did not probably cause
the rendition of an improper judgment nor did it probably prevent FPL from properly
presenting the case to this Court. See Tex. R. App. P. 44.1(a); Seureau v. Mudd, 515
S.W.2d 746, 750 (Tex.App.-Houston [14th Dist.] 1974, writ ref'd n.r.e.).

Waiver

 Finally, FPL contends that judgment should have been rendered for FPL on invoices
that Austin did not timely dispute in accordance with the Agreement. Specifically, FPL
relies on section 8.1 of the Agreement, which states, in relevant part, that

On or before the tenth day of each month during the term of this Agreement,
[FPL] shall render a statement for the Energy delivered to Austin Energy
during the preceding month and for other compensation owed to [FPL]
hereunder. . . . If Austin Energy disputes any charges included in [FPL]'s
statement, Austin Energy shall give written notice of the same describing the
basis thereof within ten (10) days of receipt of the statement.

A jury question was submitted on this issue and the jury found that Austin did not waive the
right to dispute the amounts of the payments invoiced by FPL for ERCOT OOME down
instructions. FPL's appellate issue contends that the undisputed evidence conclusively
establishes that Austin failed to provide written notice of dispute in a timely manner under
the Agreement for certain invoices. 

 As previously stated, the interpretation of an unambiguous contract is a question of
law to be determined by the court. Gulf Ins. Co., 22 S.W.3d at 423. When a contract is
worded in a manner that allows it to be given a certain or definite legal meaning, it is not
ambiguous and the court will construe it as a matter of law. Id. A contract is ambiguous
if, after applying the pertinent rules of construction, it is subject to two or more reasonable
interpretations. Columbia Gas Transmission Corp., 940 S.W.2d at 589. In determining
whether a contract is ambiguous, the court should examine and consider the entire writing
in an effort to harmonize and give effect to all the provisions of the contract so that none
will be rendered meaningless. Coker, 650 S.W.2d at 393 (Tex. 1983). A proposed
contractual interpretation that would render a portion of the contract meaningless is
considered an unreasonable interpretation. Am. Mfrs. Mut. Ins. Co., 124 S.W.3d at 159-60.

 Section 8.1 of the Agreement provides that FPL "shall render a statement for the
Energy delivered to Austin Energy during the preceding month and for other compensation
owed to [FPL] hereunder. . ." (emphasis added). As addressed in the analysis of FPL's
first issue, FPL did not and could not deliver energy to the point of delivery while under
ERCOT OOME down instructions. Therefore, for section 8.1's written dispute requirement
to apply to invoiced curtailment charges based on ERCOT OOME down instructions, such
charges had to be "compensation owed to [FPL]" under the Agreement. Section 3 of the
Agreement identifies the forms of "compensation" that Austin could owe FPL under the
Agreement. According to this section, Austin owes compensation to FPL for energy
delivered to the point of delivery, section 3.1, for costs of delivery to the point of delivery,
section 3.2, and for the loss of the benefit of certain unrenewed tax credits, section 3.3. (5) 
As a result, FPL's invoices charged Austin curtailment payments for energy not generated
and not delivered due to ERCOT OOME down instructions and these charges were not
and could not be "other compensation owed to [FPL] hereunder [or under the
Agreement] . . . ." 

 Therefore, FPL's act of invoicing Austin for compensation which, under the
Agreement, was not owed to FPL constituted a breach of the Agreement. A breach of a
contract by one party excuses the performance of the other. See Barnett v. Coppell N.
Tex. Court, Ltd., 123 S.W.3d 804, 815 (Tex.App.-Dallas 2003, pet. denied) (citing Mead
v. Johnson Group, Inc., 615 S.W.2d 685, 689 (Tex. 1981)). Thus, we conclude that Austin
was under no obligation to give FPL written notice of dispute regarding invoices charging
Austin for energy which was neither generated nor delivered due to ERCOT OOME down
instructions and its failure to provide such written notice did not constitute a breach of the
Agreement. We overrule FPL's fourth issue.

Conclusion

 We affirm the judgment of the trial court.


 Mackey K. Hancock

 Justice




1. For purposes of simplicity, we will not distinguish Texas Wind and FPL. All further
references to Texas Wind will be by reference to "FPL," as Texas Wind's assignee. 
2. Electric energy cannot be stored after being generated. When electric energy is
generated, it must be immediately transmitted to its destination. Thus, ERCOT OOME
down instructions have the effect of limiting energy generation rather than energy
transmission.
3. That FPL had made such an election applicable at all times pertinent to this case
and that this election was valid under the Agreement is not in dispute.
4. Even if this evidence conclusively established that the parties to the Agreement
intended that amended section 6.7 would obligate Austin to pay for energy that was not
generated or delivered to the point of delivery due to an ERCOT OOME down instruction,
the plain meaning of the words used in amended section 6.7 do not express this intent and
this extraneous evidence of intent could not be utilized to make the otherwise unambiguous
contract ambiguous.
5. Sections 3.4 and 3.5 provide for certain potential benefits to FPL, but neither would
give rise to Austin owing compensation to FPL.