Debra LEE, Appellee,

v.

Ann DOWNS, Superintendent, Correctional Center for Women, Goochland, Virginia; Officer Brooks, Correctional Officer, Womens Correctional Center, Goochland, Virginia; Officer Patterson, Correctional Officer, Womens Correctional Center, Goochland, Virginia, Appellants.

Debra LEE, Appellant,

v.

Ann DOWNS, Superintendent, Correctional Center for Women, Goochland, Virginia; Officer Brooks, Correctional Officer, Womens Correctional Center, Goochland, Virginia; Officer Patterson, Correctional Officer, Womens Correctional Center, Goochland, Virginia, Appellees.

Nos. 79–6641, 79–6643.

United States Court of Appeals,
Fourth Circuit.

Argued May 8, 1980.

Decided March 5, 1981.

William P. Robinson, Jr., Norfolk, Va. (Robinson, Eichler, Zaleski & Mason, Norfolk, Va., on brief), for appellant in No. 79–6643 and appellee in No. 79–6641.

Alan Katz, Asst. Atty. Gen., Richmond, Va. (Marshall Coleman, Atty. Gen. of Virginia, Guy W. Horsley, Jr., Asst. Atty. Gen., Richmond, Va., on brief), for appellees in No. 79–6643 and appellants in No. 79–6641.

Before HAYNSWORTH, Chief Judge, BUTZNER and RUSSELL, Circuit Judges.

HAYNSWORTH, Chief Judge.

After having been treated rather shabbily, a female prisoner pressed four § 1983 claims against the superintendent of the prison and some of the guards. A jury found in her favor on all four of her claims against the superintendent and against two male guards on three of the claims. Substantial damages were awarded on all four claims. Entry of judgment for the defendants notwithstanding the verdict was awarded by the district court, 470 F.Supp. 188, on three of the four claims so that judgment was entered in the plaintiff's favor upon only one of them. Each side has appealed, but we find ourselves in agreement with the district court's dispositions.

## I.

The plaintiff testified that she had been assigned to a job in the prison's kitchen. She said that she had been importuned by a group of her fellow prisoners to steal sugar from the kitchen for use by members of the group in making whiskey. According to her testimony, the group threatened to set the contents of her cell on fire when she refused their request. Because she had heard of another prisoner's cell having been set afire, she complained to a guard and requested a transfer to another building. The next day this complaint and request was repeated to a second guard. On the second day, no transfer having been effected, plaintiff threatened Ms. Bryan, a third guard. This assault was unaccompanied by any statement of a sense of need for protection, but because of the threatened violence, plaintiff was transferred to the maximum security section.

Within half an hour after having been placed in her new cell, plaintiff was seen lying on the floor with an electrical cord wound around her neck. She had removed her dress and was clad only in a bra and underpants. Guards of both sexes were summoned. Over the plaintiff's forceful resistance, they removed the loosely wound cord, covered the plaintiff with a blanket and took her to the prison's clinic.

The nurse on duty at the clinic reported the matter by telephone to the prison physician. He instructed her to treat the act as possibly suicidal and instructed the nurse to remove plaintiff's undergarments since a noose might be fashioned from them. Here the testimony diverged. The guards testified that the plaintiff was informed by the nurse that the male guards would withdraw if she would agree to remove and surrender her underclothes. Plaintiff, on the other hand, testified that she offered peacefully to surrender her undergarments if the male guards would first withdraw, but that they

seized and restrained her while the female nurse removed her clothing.

She was given a paper dress with which to cover herself. Sedatives were also administered.

The plaintiff testified that menstruation began and that she requested sanitary napkins of the nurse but did not receive them.

Four days after the removal of her underclothes, the plaintiff removed the paper dress she was wearing and set it afire. After she was seen naked, dancing about the flames and clapping her hands, guards were summoned. The flames were extinguished and the plaintiff was asked if she had any more matches. Her testimony was that her response was that she had none, though the guards testified that her response was that she had some in a place where they would never be found. Since her paper dress was to be replaced, it was thought necessary to conduct a search, including a search of her body cavities to insure that the replacement dress or plaintiff's hair was not set afire. Male guards, holding the struggling plaintiff's arms and legs, restrained her while a female nurse, wearing surgical gloves searched her vagina but found no matches.

From these instances, she sought damages for (1) failure to provide adequate protection for her against the threat of fire in her first cell; (2) invasion of privacy in the forceful removal of her underclothing in the presence of male guards; (3) deprivation of essential medical care; and (4) invasion of her right of privacy in the conduct of a vaginal search by a female nurse in the presence of the restraining male guards. Each was said to be the infliction of cruel and unusual punishment.

## II.

■ Plaintiff's claim of lack of adequate protection from the threat that the things in her cell would be set afire produced a verdict in her favor against Ann Downs, the prison superintendent, only. Ms. Bryan was acquitted by the jury since the plaintiff's testimony showed only that Ms. Bryan had been the victim· of plaintiff's assault

with no reason to know of any special need of protection on the plaintiff's part. The record is clear, however, that at the time of the incident Ms. Downs was away on vacation, out of touch with the prison. If there was any neglect or unreasonable delay in providing adequate protection for the plaintiff, it is clear that Ms. Downes did not direct it and knew nothing of it.

Moreover, if the threat of burning of plaintiff's possessions created any unreasonable risk of harm to her, the risk did not mature into reality. Her things were not burned. The district court properly concluded that the jury's verdict against the superintendent on this claim could not stand.

## III.

The district court entered judgment for the plaintiff on the jury's verdict on the claim arising out of the forceful removal of her underclothing in the presence of the guards. This was proper.

■ Persons in prison must surrender many rights of privacy which most people may claim in their private homes. Much of the life in prison is communal, and many prisoners must be housed in cells with openings through which they may be seen by guards. Most people, however, have a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating. When not reasonably necessary, that sort of degradation is not to be visited upon those confined in our prisons.

In *Forts v. Ward*, 471 F.Supp. 1095 (S.D. N.Y.1979), women prisoners sought an injunction under § 1983 against the positioning of male guards where they could observe the women while undressed and while using toilets. The court issued its injunction holding that the women's rights to be private in the most private portions of their persons must prevail despite the fact that the general employment of guards may be required to be open to persons of both sexes

under equal employment opportunity legislation. The order also directed that male guards not be stationed in rooms in which female prisoners were required to dress or undress in connection with medical examinations. In the reverse situation, male prisoners are also entitled to judicial protection of their right of privacy denied by the presence of female guards stationed in positions to observe the men while undressed or using toilets. *In re Long*, 127 Cal.Rptr. 732 (Cal.App.1976). So, too, males subject to frisk searches by female guards during which the genitals are touched and felt through clothing were held entitled to injunctive relief. *Sterling v. Cupp*, 44 Or. App. 755, 607 P.2d 206, 208 (1980).

■ Because of the conflict in the testimony, the jury was entitled to accept the plaintiff's version that she expressed a willingness to remove her underclothing if the male guards would withdraw. Viewing the case in this light, as we must, it was wholly unnecessary for the male guards to remain in the room and to restrain the plaintiff while her underclothing was forcefully removed. If the plaintiff was uncooperative and abusive as defendants testified and if it was impractical to assemble enough female guards to restrain the big, strong plaintiff within a reasonable time, as they also testified, there would be a different case, but the jury seems clearly to have accepted the plaintiff's version of the occurrence.

Here, the superintendent and the two male guards against whom the judgment on this complaint runs offer a defense of a good faith belief in the legality and appropriateness of what they did. Those defendants in the district court, however, did not undertake to shoulder the burden of proving such a defense, a burden which we have held is upon them. *McCray v. Burrell*, 516 F.2d 357, 370 (4th Cir. 1975).[1]

## IV.

■ If the forceful removal of plaintiff's underclothing in the presence of male guards was an unwarranted invasion of her right of privacy, then certainly a search of her vagina by a female nurse in the presence of two male guards was such an invasion unless there was a necessity for it. The district court thought the record conclusively established such a necessity, as do we.

The plaintiff had set her paper dress afire. Even if the jury did not believe the testimony of the guards that she said she had other matches concealed in a place where they could not be found, there was a reasonable necessity for a search of sufficient thoroughness to give assurance that she had no more matches. Her conduct had been bizarre. This was apparent in the earlier removal of her dress and the winding of an electrical cord around her neck. It was even more evident in her naked dancing and hand clapping around the burning paper dress. Assurance that she not harm herself reasonably required assurance that she had no more matches. Here the plaintiff concedes that the search was necessary but contends that a sufficient number of female guards should have been assembled to restrain her so that the search could be conducted without the presence of males.

The only direct testimony was to the effect that such a number of female guards could not be withdrawn from their established posts within any reasonable period of time. The plaintiff was big and strong, and she makes no claim that on this occasion she was docile and submissive. It was clear that her will and her physical resistance would have to be overcome by force if the search was to be conducted. The two male guards present could effectively restrain her, but the defendants might reasonably have supposed that it would require more than two female guards to overcome the plaintiff's resistance and to restrain her in

---

1. The superintendent on appeal does not contend that her liability should not be congruent with that of the two male guards. She had approved the use of male guards in situations calling for the employment of force in handling female prisoners. The presence of the guards forceably to remove the plaintiff's underclothing was authorized by her. She associated herself with the defense of the guards that their presence was necessary and appropriate.

all four of her limbs. Indeed, Superintendent Downs testified that four or five women guards might have been required to subdue the plaintiff, and that their participation would likely have increased the possibility of physical injury. In any event, the fact that an adequate number of female guards was not promptly assembled does not create a permissible inference that such a group could have been assembled with reasonable promptness in the face of the direct testimony that it could not have been.

Moreover, the harm to the plaintiff's privacy was substantially less than it would have been if the plaintiff had been fully clothed when the need for the search arose. She had removed and burned her paper dress. Male guards were about, and she must have known that they would see her naked when they entered to quench the fire. Indeed, she makes no complaint of their having viewed her after she had thus exposed herself. Since her genital area was already in full view of the two male guards, it was not an horrendous additional invasion of her right of privacy that they restrained her limbs while the female nurse conducted the search. The additional harm to be inflicted did not warrant the delay, with all of its complications, that would have been required to assemble an all female crew.

It should be noted that aside from the restraints imposed by the male guards upon her limbs, there is no claim of unprofessionalism in their conduct during the removal of her undergarments or the later search of her vagina. There were no offensive words or gestures or any other indecency.

### V.

The plaintiff claims serious inattention to her medical needs. Two of the three prongs of the claim are addressed exclusively to personnel of the medical staff, none of whom is joined as a defendant in this action. The other branch, however, is an assertion of over-reaction to her wrapping the cord around her neck. She claims that it should have been recognized that this was only an attempt to call attention to the fact that she had been threatened with the destruction of her possessions by other inmates. The reaction was the immediate direction of the prison physician, but Superintendent Downes testified that it was her policy to treat all apparent suicides as real. Thus, she would have been responsible for what was done if it amounted to a constitutional deprivation.

We agree with the district court that prison officials have a duty to protect prisoners from self-destruction or self-injury. Prudence requires that any apparent attempt on the part of a prisoner to kill or injure himself be treated as real at least until it can be firmly established that it was something else. The instance strongly suggests that the plaintiff was at least in an agitated state. That her mental or emotional condition was abnormal was strongly suggested by the burning of the dress and dancing about the flames clapping her hands. The treatment was isolation in the clinic where she could be observed, and where she was free from further threats from fellow prisoners, and the administration of sedatives. This was an entirely appropriate response to what had been observed and is far afield from a denial of a constitutional right that prison officials not be indifferent to her serious medical needs.

### VI.

The district court properly entered a judgment for the plaintiff on the one claim arising out of the removal of her underclothes and for the defendants on the other three claims.

*AFFIRMED.*

DONALD RUSSELL, Circuit Judge, dissenting:

I cannot agree to the affirmance of the judgment against Ann Downes, Superintendent, Correctional Center for Women. She was not present at the alleged delict. There is no basis for assuming that she authorized, countenanced or even was aware of it before it occurred. Under the

circumstances, I do not see how she can be held personally liable. I, however, concur in the judgment against the other defendants.