**Douglas R. MacDONALD, Plaintiff,**

v.

**Ronald ANGELONE, et al., Defendants.**

**No. CIV.A. 98–1174–AM.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Sept. 2, 1999.

Douglas Richard MacDonald, Jarrat, VA, pro se.

William Wayne Muse, Office of Attorney General of Virginia, Richmond, VA, for Defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

Plaintiff, an inmate at Virginia's Greensville Correctional Center (GCC) proceeding *pro se*, filed this action for damages and injunctive relief pursuant to 42 U.S.C. § 1983, alleging that defendants violated his constitutional right to privacy when they prevented him from covering his cell's observation window while he used the toilet. Named as defendants are: Ronald Angelone, Director of the Virginia Department of Corrections (VDOC); Rufus Fleming, VDOC Regional Director; David Garraghty, GCC Chief Warden; P.A. Edge, GCC Deputy Warden; Gregory Holloway, GCC Unit Manager at all times relevant to this action; and Colonel F.S. Spence, GCC Chief of Security.

Defendants filed a motion for summary judgment and advised plaintiff of his right to respond. *See Roseboro v. Garrison,* 528 F.2d 309 (4th Cir.1975). Plaintiff has responded, and this matter is now ripe for disposition. For the reasons that follow,

defendants' motion for summary judgment must be granted.

## I.

The operative facts are essentially undisputed and may be simply stated.[1] Plaintiff's privacy claim relates to his concern that persons passing by his cell could use a window in his cell door to observe him while he used the toilet in his cell. He first sought to remedy this situation by resorting to self-help; he taped a paper "curtain," consisting of two pieces of paper taped together, to the outside of his cell door so that it covered the observation window.[2] It appears that he attached this curtain to his cell door only while he or his cell partner used the toilet. According to plaintiff, the curtain did not jeopardize security because GCC officials could easily push the curtain aside and view plaintiff in his cell whenever they deemed it necessary to do so. Plaintiff alleges that without the curtain, female and homosexual male nurses, staff members, corrections officers, inmates, and "known predators" were able to view him while he used the toilet because they all regularly passed by his cell unannounced.

On or about August 6, 1997, plaintiff placed a paper curtain over the observation window on the outside of his cell door. While he was using the toilet, defendant Holloway pushed the curtain aside, viewed plaintiff, and then removed the curtain altogether from the cell door. Plaintiff subsequently discussed the incident with defendant Holloway and informed him that inmates have a limited right to privacy when they use the toilet. In this regard, plaintiff showed defendant Holloway a document ostensibly listing case citations and quotations on which plaintiff relied in asserting his right to use the curtain. Defendant Holloway stated he was unfamiliar with the cases.

According to plaintiff, a similar scenario occurred on August 14, 1997, when plaintiff again placed a paper curtain over his cell door observation window while he used the toilet. This time, GCC Correctional Officer Ashley, who is not a defendant, but was supervised by defendant Holloway, removed the curtain from the cell door. Plaintiff complained to Ashley and showed him the same document he had shown defendant Holloway several days earlier. Officer Ashley responded that coverings over observation windows were not allowed and that he would continue to remove any such coverings until instructed otherwise by defendant Holloway.

Plaintiff then filed an informal complaint on the matter. The record is silent as to the disposition of this complaint. Shortly thereafter, on September 16, 1997, plaintiff filed a formal grievance concerning Officer Ashley's actions. Responding to the grievance, defendant Edge, the GCC Deputy Warden, noted that removal of the coverings or curtains from the cell door window was required by GCC's security policies[3] and that plaintiff's grievance was unfounded. Specifically, defendant Edge noted that:

> [i]ncarcerated persons are not entitled to privacy when same interferes with sound security practices. In this instance[,] obstructing the observation window of you[r] cell interferes with [t]he staff's ability to view in your cell and such is not acceptable in the VA Department of Corrections. I recommend that you place the covering over

---

**1.** The facts recited here are gleaned from plaintiff's pleadings. To the extent that the facts are in dispute, all differences are resolved in favor of plaintiff, the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**2.** It is unclear from the record how plaintiff was able to affix this paper cover to the *out-* *side* of his cell door when he wished to use the toilet.

**3.** Although the record confirms the existence of this GCC policy and reveals that VDOC currently has policies and procedures concerning the covering of windows, it appears that VDOC did not have such policies or procedures in effect at the time of the events giving rise to this action.

your person/body while seated on the toilet—to afford yourself a privacy shield.

Plaintiff then appealed the denial of his grievance to defendant Fleming, the VDOC Regional Director, which appeal was denied.[4] Having exhausted his administrative remedies,[5] plaintiff then initiated this action, in which his claims, liberally construed,[6] are as follows:

1. Defendant Holloway violated his right to privacy when he removed the paper covering from plaintiff's cell door while he used the toilet; and

2. Defendants Angelone, Fleming, Garraghty, Edge, and Spence violated his right to privacy when they created, authorized, or maintained policies prohibiting all coverings of GCC cell door observation windows and when they implicitly authorized the removal of the covering from plaintiff's cell window.

At issue on summary judgment[7] are several questions: (i) whether certain defendants must be dismissed for lack of personal involvement in the facts giving rise to this action; (ii) whether defendants' claims of qualified immunity are valid; and (iii) whether plaintiff's privacy claim warrants injunctive relief.

## II.

Analysis properly begins with the question whether plaintiff's allegations and the record are adequate to state a claim against certain defendants. Defendants Angelone, Fleming, Garraghty, Edge, and Spence argue that they must be dismissed because plaintiff has failed to allege or show personal involvement by these supervisory officials.

■■■ To establish § 1983 liability, a plaintiff must affirmatively show that the "official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir.1985) (citations and quotations omitted). *Accord Garraghty v. Commonwealth of Virginia*, 52 F.3d 1274, 1280 (4th Cir. 1995); *Wheeler v. Gilmore*, 998 F.Supp. 666, 668 n. 5 (E.D.Va.1998). Moreover, plaintiff may not avail himself of the doctrine of respondeat superior, as this doctrine is inapplicable to § 1983 claims. *Wright*, 766 F.2d at 850. Thus, each of the named defendants must have had personal knowledge of and involvement in the alleged violations of plaintiff's constitutional rights for the action to proceed against them.

■■ Plaintiff argues that defendant Angelone is liable because, as Director of VDOC, he is ultimately responsible for writing, authorizing, and enacting all policies within VDOC. This argument fails factually because the policy plaintiff challenges was promulgated by GCC, not VDOC, and there is no showing in this

---

**4.** Plaintiff has submitted additional grievances and responses concerning his right to privacy at the GCC, including the practice of correctional officers coming to the shower area unannounced, and alleged violations of his cell partner's right to privacy. Because the case at bar concerns only plaintiff's right to privacy while he uses the toilet in his cell, these materials exceed the scope of this action and are not addressed here.

**5.** *See* 42 U.S.C. § 1997e(a) (requiring inmates filing suits in federal court with respect to prison conditions to first exhaust all available administrative remedies).

**6.** *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (complaints filed by *pro se* plaintiffs must be construed liberally).

**7.** The summary judgment standard is too well settled to be disputed; it is satisfied when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "mere scintilla" of evidence, however, is not enough. For the nonmoving party to avoid summary judgment, the evidence, when viewed in the light most favorable to that party, must be sufficient for a reasonable jury to find in its favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

record that Angelone had any personal involvement in GCC policy. As such, defendant Angelone must be dismissed for his lack of personal involvement in the facts giving rise to this action.

 The same cannot be said of defendants Holloway, Garraghty, and Spence; all three had some personal involvement in the promulgation or enforcement of the GCC policy in issue. In short, defendant Holloway's conduct was undertaken to effectuate an official GCC policy for which defendants Garraghty and Spence were allegedly responsible. Thus, these defendants will not be dismissed for lack of personal involvement. *See Fisher v. Washington Metro. Area Transit Auth.*, 690 F.2d 1133, 1143 (4th Cir.1982). Likewise, defendants Edge and Fleming will not be dismissed because each of these defendants had some personal involvement in the incidents and policies underlying this action, as is apparent from their responses to plaintiff's grievances.

## III.

 The actions of the remaining defendants must next be examined to determine whether they are entitled to the defense of qualified immunity. The doctrine of good faith qualified immunity shields government employees performing discretionary functions from civil liability unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Pinder v. Johnson*, 54 F.3d 1169, 1173 (4th Cir.1995). For an individual official to be held liable, the "contours of the law must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639–40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Judging whether qualified immunity at-

taches turns on a standard of objective reasonableness. *Id.* at 639, 107 S.Ct. 3034. This immunity defense provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). In determining whether the right allegedly violated was clearly established "the proper focus is not upon the right at its most general or abstract level but at the level of its application to the specific conduct being challenged." *Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir.1994).

 Thus, to determine whether a prison official is entitled to qualified immunity, courts must make three distinct determinations. *Wheeler v. Gilmore*, 998 F.Supp. 666, 669 (E.D.Va.1998) (citing *Collinson v. Gott*, 895 F.2d 994, 998 (4th Cir. 1990) (Phillips, J., concurring)). *See also Pittman v. Nelms*, 87 F.3d 116 (4th Cir. 1996). First, courts must identify the particular right allegedly violated. *See Wheeler*, 998 F.Supp. at 669 (citing *Collinson*, 895 F.2d at 998). Second, courts must determine whether the right is clearly established. *See id.* (citing *Collinson*, 895 F.2d at 998). Finally, courts must determine whether a state official could have reasonably believed that his or her conduct was lawful. *See id.* (citing *Collinson*, 895 F.2d at 998). *See also Anderson*, 483 U.S. at 641, 107 S.Ct. 3034.

 In the context of this case, the second determination is conclusive in favor of immunity. Although inmates are entitled to a limited degree of privacy while in jail, the scope of this right is not clearly established. In this regard, the Fourth Circuit has held that the involuntary exposure of an inmate's genitals to members of the opposite sex, when not "reasonably necessary," is a constitutional violation actionable under § 1983. *Lee v. Downs*, 641 F.2d 1117, 1119–20 (4th Cir.1981).[8] Yet,

---

**8.** In *Lee,* the Fourth Circuit stated that male inmates' right to privacy is denied when female guards are "stationed in positions to observe the men while undressed or using toilets," explaining that most people "have a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating." *Id.* at 1119–20.

this is merely a general principle and, by itself, far from dispositive of the case at bar, for it is unclear whether any particular abridgment of privacy is "reasonably necessary." This is so because it is also well settled that those constitutional rights retained by inmates while in prison may be restricted or abrogated based on the considerations underlying prison administration. *Bell v. Wolfish*, 441 U.S. 520, 545–46, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). *See also Hudson v. Palmer*, 468 U.S. 517, 524, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Indeed, in a recent, unpublished decision involving facts similar to those at bar, a Fourth Circuit panel upheld the district court's determination that an inmate's right to privacy was not violated. *See El-Amin v. Gluckstern*, 807 F.2d 175, 1986 WL 18275 at *1 (4th Cir.1986) (where inmate contended that his privacy rights were violated when female officer. gave him a disciplinary infraction for refusing to remove a paper blocking his cell window while he used the toilet).

■ In sum, inmates' privacy right in this regard is limited, not absolute. While inmates have a right to be protected from gratuitous and unnecessary observation while they use their cell toilets, prison officials have an overriding responsibility to take whatever steps may be reasonably necessary, including surveillance of inmates, to maintain prison security. The balance struck between the inmates' limited privacy right and the prison officials' security responsibility must vary with the facts of each case. So, it is not surprising that courts in this circuit addressing similar claims have reached apparently different conclusions in various circumstances as to whether an inmate's right to privacy is violated when members of the opposite sex can view him while he is undressed or using the toilet.[9] While it may be possible to harmonize the differing results in these cases on a close factual analysis, they nonetheless reflect the delicate nature of the balance involved, the unsettled nature of the law in this area, and the fact-specific analysis required of such claims.[10] In short, although inmates have a limited right to privacy in prison, the precise boundaries of this limited right have not been clearly delineated.

Because the existing controlling case law does not make clear that removing a paper covering from a cell observation window violates an inmate's constitutional right to privacy, even if, as a result, persons may view him using the toilet, reasonable officials in the place of defendants would not clearly understand that their specific actions and policies violated plaintiff's right to privacy. *See Anderson*, 483 U.S. at 639–40, 107 S.Ct. 3034. As such, all remaining defendants are entitled to the defense of qualified immunity.[11]

---

**9.** *See Riddick v. Sutton*, 794 F.Supp. 169 (E.D.N.C.1992) (holding that policy of allowing female guards to view male inmates in state of undress while using showers or toilets did not violate their right to privacy where inmates were permitted to cover themselves with towels or newspapers while using the toilet). *But see Dawson v. Kendrick*, 527 F.Supp. 1252, 1316 (S.D.W.Va.1981) (holding that prison violated female inmates' rights when it enabled male inmates and prison staff to peer into female inmates' cells and view them undressing or using toilets); *Hudson v. Goodlander*, 494 F.Supp. 890, 892 (D.Md. 1980) (holding that male inmate's privacy rights were violated when female guards were posted so they could view him while he was unclothed). *See also Arey v. Robinson*, 819 F.Supp. 478, 489 (D.Md.1992) (reaffirming *Hudson*, but specifying that defendants who built prison bathrooms violative of inmates' privacy rights were entitled to qualified immunity because whether construction of facilities violated inmates' rights was ambiguous under case law).

**10.** In *El-Amin*, the Fourth Circuit explained that "[w]hether viewing by female officers showering or using the toilet occurred so frequently that [prison] officials should be chargeable with violating inmate privacy rights is ... to a large extent a question of fact." 807 F.2d at 175.

**11.** Although defendant Angelone must be dismissed for lack of personal involvement in the facts giving rise to this action, he is also entitled, alternatively, to dismissal on qualified immunity grounds for the reasons stated here.

## IV.

Yet, the analysis does not end here, as the defense of qualified immunity does not apply to claims for injunctive relief. *See Knussman v. State of Maryland,* 16 F.Supp.2d 601, 610, n. 5 (D.Md. 1998) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 806, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). *See also Kaufhold v. Bright,* 835 F.Supp. 294, 298 (W.D.Va.1993) (holding that even when immunity applies, officials can be subject to injunctive relief). More precisely, because plaintiff is suing defendants in their individual capacities, defendants are not entitled to qualified immunity with respect to plaintiff's claims for injunctive relief. *Knussman,* 16 F.Supp.2d 601, at 610, n. 5.

To resolve the question of injunctive relief, plaintiff's claim that the GCC policy prohibiting all coverings over cell door observation windows violated his right to privacy must be reviewed under the constitutional standard set out in *Turner v. Safley,* 482 U.S. 78, 89–90, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). *See also Arey v. Robinson,* 819 F.Supp. 478, 486 (D.Md. 1992) (applying *Turner* to privacy claim). In *Turner,* the Supreme Court held that a prison regulation that abridges an inmate's constitutional rights is nonetheless valid if the regulation is reasonably related to legitimate penological interests. *Turner,* 482 U.S. at 89, 107 S.Ct. 2254. *See also O'Lone,* 482 U.S. at 348, 107 S.Ct. 2400 (same). Four factors were identified as relevant to consider in determining the validity of such a regulation: (1) whether there is a valid, rational connection between the prison regulation and a legitimate governmental interest; (2) whether alternative means remain open for the prisoner to exercise the right at issue; (3) what impact accommodating the prisoner's asserted right would have on correctional officers, other prisoners, and the allocation of prison resources; and (4) whether alternative methods exist to accommodate an inmate's request. *Turner,* 482 U.S. at 89–90, 107 S.Ct. 2254. These factors, applied here, point persuasively to the validity of the GCC regulation prohibiting window coverings on cell doors.

To begin with, there is, manifestly, a valid, rational connection between a legitimate governmental security interest and the prison regulation precluding plaintiff from covering the observation window on his cell door when he uses the toilet. Only a moment's reflection is needed to see that allowing inmates to cover their cell door windows while they ostensibly use the toilet might result in breaches of prison security. For example, inmates might use the time the window is covered to engage in prohibited acts or to handle contraband. Nor is it persuasive to argue, as plaintiff does, that officials can simply remove the cover whenever they deem it necessary; this is an impractical and ineffective safeguard. Moreover, where, as here, two inmates inhabit a cell, they can resort to a variety of ruses to engage in illicit conduct while one inmate ostensibly uses the toilet and the curtain covers the cell door window. The myriad possibilities for security breaches is confirmed by GCC officials' consistent contention that security considerations require all cell door observation windows to remain unobstructed.[12]

The second *Turner* factor also militates in favor of the constitutional validity of the regulation. Plaintiff had alternative means open to him to accommodate his right to privacy without compromising security at the GCC. As explained to plaintiff by defendant Edge in response to one of plaintiff's administrative grievances, plaintiff can cover his body with a sheet or towel to create a "privacy shield" while he uses the toilet. In an unpublished decision, the Fourth Circuit found this to be an adequate means of protecting an inmate's right to privacy, explaining that "while covering oneself with a towel would be an

---

12. Defendant Holloway, for example, states, by sworn affidavit, that cell doors and windows in all GCC housing units must remain clear to maintain security. GCC officials made similar statements in response to plaintiff's administrative grievances.

appropriate means of protecting one's privacy, covering the cell window created an unacceptable security risk and was not protected behavior." *El–Amin,* 807 F.2d 175, 1986 WL 18275 at *1.

Similarly, the third *Turner* factor weighs in defendants' favor. Allowing inmates to cover their cell door observation window would impose significant additional burdens on the GCC and its staff because every time they wished to survey the activity inside, GCC staff members would have to take steps (literally) to move the covering from the observation window.

Finally, the record reveals an alternative method already available to plaintiff that would both preserve security at the GCC and accommodate plaintiff's request for privacy: plaintiff may cover himself with a towel or sheet while he uses the toilet.

In summary, the *Turner* factors applied here compel the conclusion that the GCC policy precluding inmates from covering their cell door observation windows is a sensible and reasonable security measure and hence is constitutionally valid.[13] Thus, plaintiff will not be afforded injunctive relief.

An appropriate Order shall issue.

### FINAL ORDER

For the reasons set forth in the accompanying Memorandum Opinion, defendant Angelone will be dismissed for his lack of personal involvement in the facts giving rise to this action. In addition, judgment will be entered in favor of defendants Fleming, Garraghty, Edge, Holloway, and Spence as they are entitled to the defense of qualified immunity.

Accordingly, it is hereby ORDERED that:

1. Defendant Angelone is DISMISSED from this action;

2. Defendants' Motion for Summary Judgment is GRANTED; and

3. Plaintiff's prayer for injunctive relief is DENIED.

Because this Order disposes of all of plaintiff's claims, the Clerk is DIRECTED to place this matter among the ended matters.

Should plaintiff wish to appeal, written notice of appeal must be filed with the Clerk of this Court within thirty (30) days of the date of this Order.

The Clerk is DIRECTED to send a copy of this Order and the accompanying Memorandum Opinion to plaintiff and to counsel of record for defendants and to enter judgment in favor of defendants Fleming, Garraghty, Edge, Holloway, and Spence pursuant to Fed.R.Civ.P. 58.

---

**13.** It is unnecessary to reach or decide whether this conclusion would hold were there any reliable proof or evidence that GCC personnel were engaged in inappropriate or voyeuristic behavior. No such proof or evidence exists here. Were there any such evidence, it is possible that a different balance might be struck between plaintiff's right to privacy and the GCC's interest in maintaining institutional security. More likely, however, the proper remedy would involve halting the inappropriate observing, not invalidating a regulation vital to the security of a prison.