[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-13035
Non-Argument Calendar
_____

D.C. Docket No. 3:12-cv-00132-CDL

MEGAN E. MITCHELL,
CLIFTON JACKSON,

Plaintiffs-Appellees,

versus

HARVEY E. STEWART, III,
DAVID WHIRRELL,
MICHAEL MAXEY,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Georgia
_____

(April 9, 2015)

Before HULL, MARTIN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Harvey E. Stewart, III, David Whirrell, and Michael Maxey (Defendants), three Greene County police officers, appeal the district court's denial of qualified immunity. This case arose from Megan E. Mitchell's and Clifton Jackson's (Plaintiffs) 42 U.S.C. § 1983 and state-law suit, alleging that the Defendants violated their Fourth Amendment rights when (1) they entered and searched the Plaintiffs' home, (2) arrested them without probable cause, and (3) transported them to the jail with their genitalia exposed. The Defendants moved for summary judgment, claiming qualified immunity. The district court granted qualified immunity for the first two claims, but denied qualified immunity and official immunity for the third claim. On appeal, the Defendants challenge whether there are genuine issues of material fact about whether the manner of transportation to the jail violated the Fourth Amendment. The Defendants argue alternatively that even if there are genuine issues of material fact, the Plaintiffs' rights were not clearly established at the time of any violation. After careful consideration, we affirm.

## I.

We review de novo a district court's denial of summary judgment. Fils v. City of Aventura, 647 F.3d 1272, 1287 (11th Cir. 2011). Summary judgment may be granted only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a).  In viewing the evidence, this Court draws all reasonable inferences in the light most favorable to the nonmoving party, and "when conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's version."  Evans v. Stephens, 407 F.3d 1272, 1278 (11th Cir. 2005) (en banc).

## II.

The Defendants first argue that there are no genuine issues of material fact about whether they unreasonably seized the Plaintiffs.  If an officer has probable cause to arrest a person, the seizure must still be reasonable.  Tennessee v. Garner, 471 U.S. 1, 8, 105 S. Ct. 1694, 1699 (1985).  "To determine the constitutionality of a seizure we must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion."  Id. (quotation marks omitted) (alteration adopted).  Additionally, "it is plain that reasonableness depends on not only when a seizure is made, but also how it is carried out."  Id.

Viewing—as we must—the evidence in the light most favorable to the Plaintiffs, the record reveals the following version of events.[1]  The Plaintiffs were in their home engaging in sexual activity when the Defendants arrived, knocked on the door, and announced themselves as police officers.  Jackson asked the officers

---

[1] Because the Plaintiffs do not challenge the district court's grant of qualified immunity on their claims that the officers unlawfully entered and searched the Plaintiffs' home and arrested them without probable cause, we assume here that the officers' search was lawful and that they had probable cause to arrest the Plaintiffs.

3

to wait for him to put on clothes, but an officer shouted that "we'll worry about clothes in a minute." Jackson opened the door completely naked. The officers had Jackson sit on a couch, still naked. Mitchell, wearing a sweater that did not cover her, then appeared in the living room and sat on the couch. Both Mitchell and Jackson stated that all three officers had flashlights and repeatedly shined the light on their faces and genitalia. Mitchell specifically stated that she "saw each of them looking directly at [her] exposed body." At one point, Mitchell said she was "cold and needed some clothes," but the officers refused to allow her to put on clothing other than the sweater.

Eventually, the officers arrested the Plaintiffs and prepared to transport them to jail. Jackson alleged that he "grabbed [a] jacket and put it on while Officer Maxey was handcuffing [him]," but that he was wearing nothing else. He was taken without pants to a police car, with his genitalia fully exposed. Meanwhile, Mitchell alleged that

> [Officer] Whirrell grabbed my arms and handcuffed me behind my back. . . . My sweater flung completely open. Nothing was covered. My breast was exposed. My genitals were exposed. [Officer] Stewart kept his flashlight on me the entire time as I was being handcuffed. Then he walked toward my kitchen. [Officer] Whirrell turned me around and I asked him again, could I please get some clothes on. He said, "No". We walked out of my front door with his flashlight still on.

Mitchell Decl. 7, ECF No. 60-1. The officer took her outside and placed her in another police car. A number of neighbors who witnessed Mitchell and Jackson as

4

they walked to the police cars stated unequivocally that they saw Mitchell's and Jackson's genitalia.  See, e.g., McCommons Decl. 1–2, ECF No. 60-3 (stating that "Cliff [Jackson] had on a white jacket with nothing underneath" and that "Megan [Mitchell] had on an open sweater" with her "breast and private area" exposed); M. Jackson Decl. 1–2, ECF No. 60-4 (stating that he "could see everything, including [Jackson's] private area" and that he "could see [Mitchell's] breast"); Thomas Decl. 1–2, ECF No. 60-5 (stating that he "could see [Jackson's] genital area as he walked to the police car parked on the street," and that he "could see [Mitchell's] breast and private area" because "[s]he did not have on any bottoms or anything underneath the jacket"); L. Jackson Decl. 2, ECF No. 60-6 (noting that "Cliff [Jackson] did not have on a shirt or underwear" and that "[h]e was fully exposed," and that he "could see Megan[ Mitchell's] breast through the sweater she had on").

Once the police car carrying Mitchell arrived at the jail, Mitchell got out of the car, walked through the door, and sat on a bench—still dressed in only a sweater.  At least two male inmates claimed to see her exposed body in the jail.  See, e.g., Davis Decl. 1–2, ECF No. 60-2 ("Through the window I saw Megan Mitchell in a little brown shirt with her breast and genitals exposed.  I saw her standing in the area you are searched at before you entered the jail.  The other trustees and I took turns looking out the window at Megan.").  Based on this version of events, we agree with the district court that a reasonable jury could find

5

that Mitchell's and Jackson's Fourth Amendment rights were violated because their seizure and transportation to the jail was unreasonable.  See Fortner v. Thomas, 983 F.2d 1024, 1030 (11th Cir. 1993) (recognizing the "constitutional right to bodily privacy because most people have 'a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating'" (quoting Lee v. Downs, 641 F.2d 1117, 1119 (4th Cir. 1981))).

The Defendants argue that based on a video recording from one of the police cars at the scene, it is beyond dispute that Mitchell's private areas were not exposed in the sweater because the sweater was buttoned and it extended "considerably below the waist area."  They rely on Scott v. Harris, 550 U.S. 372, 127 S. Ct. 1769 (2007), in which the Supreme Court held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Id. at 380, 127 S. Ct. at 1776.

However, this video recording does not "blatantly contradict[]" the Plaintiffs' allegations.  As Officers Whirrell and Maxey admit in their brief, "[t]he DVD is [of] less than optimal quality."  Also, the video only shows Mitchell's full profile for about six seconds, as she is being walked from the house to the police

car.  The lighting is extremely dim, and the footage is grainy.  In those brief seconds, it is difficult to tell the extent to which Mitchell is exposed as she walks.  And looking at the record images of the sweater taken after the incident, even if the sweater was fully buttoned as the Defendants claim, a reasonable jury could find that Mitchell's pubic area was nonetheless exposed since the buttons do not secure the bottom of the sweater.  Given the lack of clarity, the video footage in this case hardly resolves the question.  It is simply one additional piece of evidence the jury may consider to determine Mitchell's exposure.

Beyond that, although the Defendants admit that Jackson "was taken to jail without pants," as confirmed by the video footage, the Defendants argue that they believed "the appropriate thing to do was to get [Jackson] on into the vehicle" since they had "heated exchanges" with him in the house.  In other words, they argue that Jackson's nudity was justified by the circumstances.  But whether any "heated exchanges" justified the officers' decision to prevent Jackson from wearing pants is precisely the type of fact-specific inquiry that should be left to the jury.  We agree with the district court that

> [t]he evidence viewed in the light most favorable to Plaintiffs shows that (1) Mitchell was naked except for a sweater that did not cover her private areas; (2) Jackson was naked except for a jacket that did not cover his private areas; (3) before the officers arrested Plaintiffs and escorted them from the house, the officers pointed their flashlights directly at Plaintiffs and looked at their exposed bodies; (4) each Plaintiff asked Defendants for clothes at least twice; and (5) Plaintiffs' neighbors and jail inmates could see Plaintiffs' exposed bodies.

7

These facts must be accepted when deciding Defendants' motion for summary judgment.

Although a jury may discredit this version of events at trial, we are not at liberty to make that determination on summary judgment. In the light most favorable to the Plaintiffs, there are genuine issues of material fact about whether the Plaintiffs' Fourth Amendment rights were violated.

III.

Defendants argue that even if there are genuine issues of material fact about whether the seizure here was unconstitutional, the district court still erred in denying them qualified immunity because no constitutional violation was clearly established at the time of the incident. Qualified immunity protects government officials performing discretionary functions from liability for civil damages. Wilson v. Layne, 526 U.S. 603, 609, 119 S. Ct. 1692, 1696 (1999). All parties agree that the officers here were engaged in discretionary functions. Under the Supreme Court's qualified immunity standard, even if "a violation could be made out on a favorable view of the parties' submissions," a court must also ask whether the right at issue was "clearly established." Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202, 121 S. Ct. at 2156.

8

This Court has recognized three ways that a Plaintiff can show a right was clearly established. "First, the plaintiffs may establish that the right was clearly established by pointing to a materially similar case decided by the Supreme Court, this Court, or the [state] Supreme Court." Terrell v. Smith, 668 F.3d 1244, 1256 (11th Cir. 2012) (quotation marks omitted). Second, the Plaintiffs "also may show that a constitutional right was clearly established through a broader, clearly established principle that should control the novel facts of the situation." Id. (quotation marks omitted) (alterations adopted). "However, the principle must be established with obvious clarity by the case law so that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." Id. (quotation marks omitted). "Finally, the words of the pertinent federal statute or federal constitutional provision in some cases will be specific enough to establish clearly the law applicable to particular conduct and circumstances and to overcome qualified immunity, even in the total absence of case law." Id. at 1257 (quotation marks omitted).

The district court focused primarily on the second avenue, finding "a broad, clearly established principle that individuals who have been placed in police custody have a constitutional right to bodily privacy." We agree. This Court has recognized this right in at least two cases. In Fortner v. Thomas, we

9

"recognize[ed] a prisoner's constitutional right to bodily privacy because most people have 'a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating.'" 983 F.2d at 1030 (quoting Lee, 641 F.2d at 1119); see also id. ("[W]e now recognize that prisoners retain a constitutional right to bodily privacy."). And in Boxer X v. Harris, 437 F.3d 1107 (11th Cir. 2006), we again affirmed "the privacy rights of prisoners emphasizing the harm of compelled nudity." Id. at 1111. These two cases clearly establish the principle that, absent a legitimate reason, individuals maintain a right to bodily privacy, in particular the right not to have their genitals exposed to onlookers.

The Defendants argue that Fortner and Boxer X do not clearly establish that the officers' conduct in this case was unconstitutional because those two cases dealt with female prison officers who forced male prisoners to expose their private areas. This might be an effective argument if we were relying on the first way to find a clearly established right, which requires providing a "materially similar case." Terrell, 668 F.3d at 1256. But the district court followed the second avenue, which requires only a "broader, clearly established principle that should control the novel facts of [a] situation." Id. As the district court wisely reasoned:

> If convicted prisoners retain a constitutional right to bodily privacy while in jail, then they must have had that right before they were incarcerated, which means that free citizens enjoy at least the same right to bodily privacy. And if a prison guard must have a legitimate

10

reason for impinging an inmate's right to bodily privacy, then an arresting officer certainly must have a legitimate reason for violating the bodily privacy rights of an arrestee.

Indeed, prisoners retained a right to bodily privacy in Fortner even though "we must give great deference to the decisions of prison officials." Fortner, 983 F.2d at 1029 (citing Bell v. Wolfish, 441 U.S. 520, 547, 99 S. Ct. 1861, 1878 (1979)). The rights of arrestees are surely as substantial as those of inmates. Of course, at trial, the jury may determine that the officers here did have a legitimate reason for exposing the Plaintiffs to onlookers in this way. But we may not make that determination for them at the summary-judgment stage. We find it was clearly established at the time of the incident in question that the Plaintiffs had a broad constitutional right to bodily privacy, and that in the light most favorable to the Plaintiffs, a reasonable jury could find that the Defendants violated that right.

IV.

The Defendants offer similar arguments to say that they are entitled to official immunity on the Plaintiffs' state-law claims. In Georgia, "[p]ublic agents are immune from liability for their discretionary acts unless they are done with malice or intent to injure." Taylor v. Waldo, 709 S.E.2d 278, 281 (Ga. Ct. App. 2011). "[A]ctual malice requires deliberate intention to do wrong." City of Atlanta v. Shavers, 756 S.E.2d 204, 206 (Ga. Ct. App. 2014) (quotation marks omitted) (emphasis omitted). We agree with the district court that "a jury could

11

conclude that Defendants knew that Plaintiffs were nearly naked and that there was no legitimate purpose for parading them in front of their neighbors and to the jail that way, but Defendants did it anyway." Thus, for the same reasons we affirm the district court's denial of qualified immunity on the Plaintiffs' § 1983 claims, we affirm the district court's denial of official immunity on the Plaintiffs' state-law claims.

Finally, we affirm the district court's denial of summary judgment on the Plaintiffs' claims for punitive damages under both state and federal law. See O.C.G.A. § 51-12-5.1(b) (allowing punitive damages under Georgia state law where "the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences"); Smith v. Wade, 461 U.S. 30, 51, 103 S. Ct. 1625, 1638 (1983) (noting, in a § 1983 case, that a jury may award punitive damages if the defendant's conduct involved a "reckless or callous indifference" to the plaintiff's federally protected rights). As we have said repeatedly, "[n]o matter how egregious the defendant's conduct, whether to award punitives is left to the factfinder." Wright v. Sheppard, 919 F.2d 665, 671 (11th Cir. 1990).

**AFFIRMED.**

12